Workmen's Compensation Appeal Board of the Commonwealth of Pennsylvania and Lue Ada Seagraves, Widow of Joseph W. Seagraves, Appellees, *v.* Pennsylvania-Bradford Appliance Corporation and Pennsylvania Manufacturers' Association Insurance Company, Insurance Carrier, Appellants.

244

Argued March 6, 1975, before Judges WILKINSON, JR., MENCER and BLATT, sitting as a panel of three.

*John F. McElvenny*, for appellants.

*Stanley M. Poplow*, with him *James N. Diefenderfer*, for appellees.

OPINION BY JUDGE WILKINSON, April 1, 1975:

In this gruesome Workmen's Compensation case, it is conceded that claimant-appellee's decedent was killed when his head was crushed in a large press machine used to force-fit tops on boilers or tanks. The question to be determined is whether the decedent's death was accidental or whether the death was intentionally self-inflicted. The referee found that the decedent inserted

his head into the machine to bring about his own demise and denied compensation. The Workmen's Compensation Appeal Board reversed the referee and found that decedent's death was accidental and awarded compensation. Employer-appellant now appeals to this Court.

We note that the Workmen's Compensation law places the burden of proof on the employer when it is claimed the death was intentionally self-inflicted. Section 301(a) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, *as amended,* 77 P.S. §431 (Supp. 1974-1975). The actions of the Board in this case must be evaluated in light of the 1972 Amendments to the Workmen's Compensation Act and this Court's decision in *Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973). Since the Board took no additional evidence, they have no power to vacate findings by the referee that are supported by competent evidence. *Universal Cyclops, supra.* In order to determine if the Board exceeded its appellate scope of review function by vacating the referee's finding that the decedent committed suicide, we must make a somewhat detailed review of the evidence presented by the employer-appellant.

Testimony given by one of decedent's co-workers, the operator of the machine, shows that the decedent, approximately 60 to 90 minutes before the incident, went to the machine (where he was not assigned to work) and ran the machine through a cycle of operation without any materials being in it. He further testified that when questioned about his actions, decedent made an inaudible answer and walked away. The machine operator also disclosed that the machine was operating properly and had not malfunctioned in any way while he was the operator. He detailed the two steps necessary to turn the machine on and operate it (involving the pushing of a button some 10 feet from the machine and the operation

of a lever on the machine), and said that the closing of the press on the machine took approximately four seconds. He further stated that he definitely turned off the machine when he left for lunch, a few minutes before decedent was found in the machine.

Decedent's foreman testified that decedent was a very good worker but that "a couple of days before [the incident] he seemed to be in some kind of mood . . . where he was not talking to anybody . . . was standing there and staring into space . . . not paying attention to anyone" and that other workers had also noticed this unusual behavior. The foreman also disclosed that this was the first injury he had seen on these machines in his 43 years with the company.

The psychiatrist, who had previously treated the decedent, testified to the following: that the decedent had required two weeks of psychiatric hospitalization about eight months prior to his death; that prior to the hospitalization, he had been acting abnormally; that he had been suffering from delusions, most notably that "snakes were crawling in his head . . . and that he had a fear of being poisoned or being killed." The doctor's diagnosis of decedent's illness was "schizophrenia, reaction paranoid type." The doctor further stated that he treated decedent with a strong tranquilizing medication, and that decedent continued on heavy doses of medication until his last office visit when, against the doctor's advice, decedent left his care. This was some three and a half months before his death. Although the doctor would not give an opinion whether decedent committed suicide, he did state decedent's paranoid condition "may very well have been an expression of suicide" or a "claim that [he] was afraid of killing [himself]."

The employer-appellant's remaining evidence consisted of the various reports prepared by the Office of the Medical Examiner of Philadelphia, the testimony of

the pathologist who was responsible for the death investigation of the Medical Examiner, and the testimony of an investigator from the Medical Examiner's office. The investigator testified his inquiries revealed that earlier on the day of his death, the decedent had been staring into a furnace on part of the foundry where he had no assignment. The reports for the most part verify what was testified to by the witnesses at the referee's hearing.

It is clear from the above review of the evidence that the referee had sufficient competent evidence on the record by which he could have found that employer-appellant had shown that decedent had "inserted his head into the machine to bring about his own demise . . . voluntarily committing suicide." The findings of fact, even though they may be inartfully worded, rest on a sound basis of competent evidence and the Board was, therefore, in error when, without taking additional evidence, it vacated those findings. *Universal Cyclops, supra.*

Able counsel for claimant-appellee argues that the opinion of the pathologist contained in the Medical Examiner's report that the manner of death was due to "suicide while balance of mind disturbed," and his further opinion testified to that decedent committed suicide were both incompetent and improperly admitted evidence. We need not reach this issue since we have found that the admittedly admissible portions of the reports and the other testimony of the witnesses are sufficient competent evidence to support the referee's findings.

Accordingly, we enter the following

### ORDER

Now, April 1, 1975, the order of the Workmen's Compensation Appeal Board is reversed and the decision of the referee is hereby reinstated and affirmed.