Universal Cyclops Steel Corporation, et al. *v.*
Krawczynski.

Argued April 5, 1973, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Roy F. Walters, Jr.,* with him *Brandt, McManus, Brandt & Malone,* for appellants.

*Ralph A. Davies,* with him *Thomson, Rhodes & Grigsby,* for appellee.

OPINION BY JUDGE BLATT, June 11, 1973:

This is an appeal by Universal Cyclops Steel Corporation (employer) from an order of the Workmen's Compensation Appeal Board awarding compensation to Joseph P. Krawczynski (claimant) for an injury caused by an accident occurring in the course of his employment.

The facts are confusing and disputed, but apparently on September 13, 1966, the claimant was working as a charger-helper on the 4:00 p.m. to 12:00 midnight shift. The claimant was a union committeeman, and soon after arriving at work he informed his supervisors that, due to a dispute involving the disciplining of some other workmen, the men were going to walk off their jobs at 8:00 p.m. that night. This walkout was apparently not sanctioned by the union. Being forewarned, certain management officials closed all exits from the plant except one, and certain of the officials stationed themselves at that exit.

Shortly after 8:00 p.m., the claimant and about 30 other workmen approached this exit with the avowed purpose of leaving the plant. The claimant, who was in the lead, had his path blocked by J. E. Collery (Collery), the employer's Manager of Industrial Relations. The testimony is in controversy as to what happened next. According to the claimant Collery told him that no one was leaving unless it was "over his dead body." The claimant says that he then attempted to step around Collery but that Collery shoved him with his hand and pushed him against the corner of the building, causing the claimant to slide to the ground. Collery, on the other hand, testified that his sole purpose for being at the gate was to advise the workers that they were participating in an unauthorized strike and to persuade

them to return to work. He indicated that, although there might have been some physical contact between himself and the claimant, he did not shove the claimant against the wall, and in fact permitted the claimant to pass around him. Eyewitnesses were produced to support each story. In any case, it is undisputed that the claimant then proceeded past Collery, made a phone call, and finally returned to work with the other employees.

Thereafter the claimant began to experience head, neck and back problems, and consulted a physician. He testified that he could no longer do his normal work, and, in fact, that he worked only one or two days after the alleged accident on September 13. Payroll records introduced by the employer, however, as well as the testimony of several witnesses, indicated that the claimant continued working until the end of September and did not consult the plant nurse regarding his alleged injuries until September 27, 1966. He clearly has not returned to work since the end of September, 1966, and, during October of that year, he was hospitalized for two weeks; he has since been regularly under a doctor's care.

The claimant filed a claim petition seeking benefits pursuant to The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, 77 P.S. §§1 et seq. Hearings were held before three different referees. The claimant presented three medical witnesses while the employer presented none. Dr. Cyril R. Allen, Jr., testified that the claimant was suffering from severe headaches, dizziness and a lumbo-sacral problem with muscle spasms and backaches, that these were the result of being shoved against the wall, and that he is totally disabled thereby. Dr. Walter W. Hiller, Jr., a psychiatrist, testified that he had examined the claimant and found that he had a traumatic type of neurosis which contributed, possibly to a great extent, to his

physical complaints and was itself disabling.  Dr. Hiller believed that this neurosis was triggered by the confrontation between the claimant and Collery, and might have resulted whether or not the claimant was actually struck by Collery.  Dr. John B. Blakely, an orthopedic surgeon, found that the claimant had sustained sprains of his cervical spine and thoracic spine, on top of preexisting degenerative changes, and attributed these to the alleged accident of September 13, 1966.  Although he found the claimant unfit for work as of the date of his testimony (December 4, 1969), he attributed this to the claimant's neurosis rather than to his physical problems.

On April 26, 1971, Referee Carl B. Fried (the third referee in the case) handed down an adjudication denying benefits to the claimant because he had failed to prove a compensable accident during the course of his employment.  Specifically, the referee found that the claimant was currently totally disabled, that he failed to show he had suffered an accident in the course of employment and that the disability was not in any case related to the accident which the claimant alleged had occurred on September 13, 1966.  The claimant then appealed to the Board, which took no additional evidence, but, on October 26, 1972 reversed the order of the referee and awarded benefits to the claimant.  In so doing, the Board set aside certain of the referee's findings of fact and substituted its own.  Specifically, it found that an accident had occurred in the course of the claimant's employment and that his disability was directly related to that accident.

Our scope of review in cases such as this is limited to a determination as to whether or not constitutional rights were violated, an error of law was committed, or any necessary finding of fact was unsupported by substantial evidence.  *Arnold Coal & Supply Co., Inc. v. Markle*, 8 Pa. Commonwealth Ct. 107, 300 A. 2d 916

(1973) ; *Bayuk Cigar Company v. Hawn,* 8 Pa. Commonwealth Ct. 45, 300 A. 2d 837 (1973).

Because the Board took no further evidence, and did not hold that the referee's findings were unsupported by competent evidence, we must rely on the facts as found by the referee. It has consistently been held by the courts of this Commonwealth, of course, that the Board is the final arbiter of facts and that it may disregard the findings of fact of the referee at will, substituting its own findings in place thereof. *See Bullock v. Building Maintenance, Inc.,* 6 Pa. Commonwealth Ct. 539, 297 A. 2d 520 (1972) ; *Mohler v. Cook,* 205 Pa. Superior Ct. 232, 209 A. 2d 7 (1965) ; *Dixon v. Shapiro,* 203 Pa. Superior Ct. 535, 201 A. 2d 231 (1964) ; *Ferlazzo v. Harbison-Walker Refractories Company,* 200 Pa. Superior Ct. 390, 189 A. 2d 189 (1963). The basis for such a holding is Section 423 of the Workmen's Compensation Act, 77 P.S. §854, which, at the time of those decisions, read in pertinent part: "[In any such appeal the board may disregard the findings of fact of the referee, and may examine the testimony taken before such referee,] and if it deem proper may hear other evidence, and may substitute for the findings of the referee such findings of fact as the evidence taken before the referee and the board, as hereinbefore provided, may, in the judgment of the board, require, and may make such disallowance or award of compensation or other order as the facts so founded by it may require." (Brackets added.)

In 1972, however, important changes were made to the Workmen's Compensation Act, including changes to Section 423. Act No. 12 of 1972, enacted February 8, 1972, changed the language which is in brackets in the above paragraph to read as follows: "In any such appeal the board may disregard the findings of fact of the referee, if not supported by credible evidence. . . ." The remainder of the paragraph was left intact. Act

No. 61 of 1972, enacted a few weeks later, on March 29, 1972, and effective May 1, 1972, changed this paragraph of Section 423, so as to substitute for the word "credible" the word "competent." Therefore, since May 1, 1972, this paragraph of Section 423, 77 P.S. §854, has read: "In any such appeal the board may disregard the findings of fact of the referee if not supported by competent evidence and if it deem proper may hear other evidence, and may substitute for the findings of the referee such findings of fact as the evidence taken before the referee and the board, as hereinbefore provided, may in the judgment of the board, require, and may make such disallowance or award of compensation or other order as the facts so founded by it may require."

We interpret these amendments, when read in conjunction with the rest of Act No. 12 and Act No. 61, which Acts give much greater authority to the referees and change their status as agents of the Board,[1] as taking the ultimate fact-finding role from the Board unless it also chooses to hear new evidence. This would seem particularly clear when we consider that Act No. 61 substituted the word "competent" for the word "credible," thus indicating that the Board is now to consider only the competence, rather than the credibility, of evidence presented to the referee, while, of course, the Board may still consider the credibility of witnesses appearing before the Board, itself, and may also consider whether any conclusion reached by the referee constitutes an error of law.

We must consider, however, whether or not these changes apply to this case, for the alleged accident here and the institution of this action both occurred well

---

[1] Act No. 12 of 1972 has amended Section 401 of the Workmen's Compensation Act, 77 P.S. §701, so as to provide that referees will no longer be agents of the Board but will be "appointed by and subject to the general supervision of the Secretary of Labor and Industry. . . ."

before the effective date of either Act No. 12 or Act No. 61. The general rule on this subject has been stated as follows: "Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But where it concerns merely the mode of procedure, it is applied, as of course, to litigation existing at the time of its passage. . . ." *Kuca v. Lehigh Valley Coal Co.*, 268 Pa. 163, 166, 110 A. 731, 732 (1920). *See Misitis v. Steel City Piping Company*, 441 Pa. 339, 272 A. 2d 883 (1971); *Smith v. Fenner*, 399 Pa. 633, 161 A. 2d 150 (1960); *Pope v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.*, 176 Pa. Superior Ct. 276, 107 A. 2d 191 (1954). "A procedural statute may be applied to litigation instituted prior to its enactment *but not completed.*" (Emphasis in original.) *Wiegand Appeal*, 214 Pa. Superior Ct. 371, 374, 257 A. 2d 627, 629 (1969). *See Upper Montgomery Joint Authority v. Yerk*, 1 Pa. Commonwealth Ct. 269, 274 A. 2d 212 (1971).

A change in the Board's scope of review has been held to be a procedural matter and applicable, therefore, to litigation then in progress. *Seneca v. Yale & Towne Mfg. Co.*, 142 Pa. Superior Ct. 470, 16 A. 2d 754 (1941). We believe, therefore, that the Board's scope of review in cases, such as here, which it decides after May 1, 1972, should be as established by Act No. 61.

Unfortunately, the findings of fact made by the referee are not as extensive or as much to the point as they should be. The referee's third finding of fact, for example, is that the claimant is totally disabled but that such disability is not related to the alleged accident of September 13, 1966. It can be inferred from this finding that the referee apparently reached the not unreasonable conclusion that the claimant's disability was a result of his neurosis, which might have been brought about merely from his confrontation with Col-

lery, rather than from the alleged accident itself. Certainly this result can be inferred from the testimony of the claimant's medical witnesses, and the Board did not challenge their competency on this matter. This finding of fact as to lack of causation could not be reversed by the Board absent a finding that the witnesses lacked competence or on the basis of additional testimony taken by the Board. Neither was done, however, and the referee's finding as to lack of causation would be sufficient to deny claimant's petition.

Another basis for denying compensation could also be that the alleged accident did not occur in the course of the claimant's employment. Even if we accept the claimant's contention that he was shoved by Collery and thereby suffered an accident, it could be that such accident did not occur in the course of his employment as contemplated by the law. Here Section 301(c) of the Workmen's Compensation Act, 77 P.S. §411,[2] is controlling, and it provides, *inter alia:* "The term 'injury by an accident in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer,

---

[2] Section 301(c) has also been amended by Act No. 61, but since it concerns substantive matters the amendment cannot be applied to the current litigation, which was begun prior to the effective date of Act No. 61.

or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment."

Both the referee and the Board in this case treated the ultimate issue of whether or not the claimant was in the course of his employment as an issue of fact, but it should properly have been treated as a question of law. *Henry v. Lit Brothers, Inc.*, 193 Pa. Superior Ct. 543, 165 A. 2d 406 (1960); *Elliott v. Delmont Fuel Company*, 183 Pa. Superior Ct. 13, 127 A. 2d 777 (1956); *Haas v. Brotherhood of Transportation Workers*, 158 Pa. Superior Ct. 291, 44 A. 2d 776 (1945). The claimant described the alleged accident as having been caused by the act of Collery, a third person, and, therefore, to be compensable it would have had to be shown that such action was directed against the claimant not for personal reasons but for some reason connected with his employment. The burden, of course, would be on the employer to show that the cause of the injury inflicted by the third person did arise from personal difficulties. *Meucci v. Gallatin Coal Co.*, 279 Pa. 184, 123 A. 766 (1924); *Cox v. Universal Terminal & Stevedoring Company*, 206 Pa. Superior Ct. 207, 212 A. 2d 909 (1965). Here, however, there was no evidence of any personal enmity between the claimant and Collery, and it would seem clear that any injury which occurred arose out of a situation concerning the claimant's employment, not out of a dispute over personal matters.

We must next consider, therefore, whether or not an injury received while an employee is attempting to leave his place of employment in order to participate in a strike constitutes an injury "in the course of his employment." We realize that the phrase "course of employment" must be given a liberal construction. *Hesselman v. Somerset Community Hospital*, 203 Pa. Superior Ct. 313, 201 A. 2d 302 (1964). This is especially so when the injury occurs on the premises of the

employer. *Dunphy v. Augustinian College of Villanova,* 129 Pa. Superior Ct. 262, 195 A. 782 (1937). As this Court has recently stated: "[A]n accident is compensable if it occurs on the 'premises' of the employer and if the employee's presence on such premises was required by the nature of his employment. . . . The term 'premises' is to be understood to include, not all of the employer's property, but only those portions thereof which are in or immediately adjacent to the employer's place of business where the employee concerned is employed, or which constitute a reasonable means of access thereto." *Fetzer v. Michrina,* 8 Pa. Commonwealth Ct. 273, 279, 301 A. 2d 924, 927 (1973). Of course, the mere presence on the premises is not in itself sufficient to show that the employee was in the course of his employment, and the burden is on the claimant to show that he was actually engaged in the furtherance of the business or affairs of the employer. *Bullock, supra.*

The issue of what constitutes "course of employment" was considered in *Shoffler v. Lehigh Valley Coal Co.,* 290 Pa. 480, 139 A. 192 (1927), as follows:

"Under the Compensation Act, an injury in the course of employment embraces all injuries received while engaged in furthering the business of the employer, and injuries received on the premises, subject to these limitations: (1) the employee's presence must ordinarily be required at the place of injury, or, (2) if not so required, the departure of the servant from the usual place of employment must not amount to an abandonment of employment, or be an act wholly foreign to his usual work; it must be merely an innocent or inconsequential departure from the line or place of duty.

.  .  .  .

"The incident necessary to constitute a break in the course of employment must be of a pronounced character. Though all the above essentials for compensa-

tion be present, 'course of employment' does not include (a) injuries received while away from the actual place of employment where the deviation or departure is wholly foreign to his duties, and amounts to an abandonment of employment; (b) injuries received in the commission of an act which is in direct violation of the law; or (c) an act contrary to the positive orders of the employer." 290 Pa. at 483-484, 139 A. at 193.

It is apparent that the presence of an employee-claimant on the premises is an extremely important factor in determining "course of employment," but it is not the sole factor. Furthermore, it is not required that the accident arise directly out of the claimant's employment, and it is "not necessary to entitle a claimant to compensation that the injury be sustained while the employee is actually engaged in the work he was hired to do. . . ." *Wolsko v. American Bridge Company,* 158 Pa. Superior Ct. 339, 345, 44 A. 2d 873, 875-876 (1945). *See Keim v. Burkholder,* 182 Pa. Superior Ct. 460, 127 A. 2d 752 (1956). The activity engaged in, however, must be in the furtherance of the employer's business and required by the nature of the claimant's employment. *Eberle v. Union Dental Company,* 390 Pa. 112, 134 A. 2d 559 (1957); *Beamer v. Stanley Co. of America,* 295 Pa. 545, 145 A. 675 (1929). The important element is that there be nothing to show that claimant "had virtually *abandoned* the course of his employment, or that he was, at the time of the accident, *engaged in something wholly foreign thereto.* . . ." (Emphasis added.) *Adams v. Colonial Colliery Co.,* 104 Pa. Superior Ct. 187, 190, 158 A. 183, 184 (1932). *See Kramer v. City of Philadelphia,* 179 Pa. Superior Ct. 129, 116 A. 2d 280 (1955).

Any break in employment which would constitute abandonment must, of course, be of a pronounced nature. *Henry, supra; Hall v. Carnegie Institute of Technology,* 170 Pa. Superior Ct. 459, 87 A. 2d 87 (1952).

Abandonment of employment, for example, does not occur when the claimant temporarily leaves his place of employment for leisure, recreation or comfort. *Hopwood v. Pittsburgh,* 152 Pa. Superior Ct. 398, 33 A. 2d 658 (1943); *Tappato v. Teplick & Eisenberg Co.,* 133 Pa. Superior Ct. 231, 2 A. 2d 545 (1938). In this case, the claimant was attempting to participate in a strike against the employer when the alleged accident occurred, and a strike is surely as clear an indication of abandonment of employment, or an action wholly foreign to the claimant's employment, as can be envisaged. The claimant was attempting to leave his place of employment without authority to do so, without the intent of immediately returning and with the intent of injuring the employer economically through the instrumentality of the strike. Although the claimant was on the employer's premises when the alleged injury occurred, therefore, it can not be held that he was acting at the time in question within the course of his employment.

For the above reasons, therefore, we issue the following

ORDER

Now, June 11, 1973, the order of the Workmen's Compensation Appeal Board granting compensation to Joseph P. Krawczynski is hereby reversed and his claim is hereby denied.