In Re: Honey Bear, Inc. Revocation of Liquor License. Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant.

Argued May 11, 1979, before Judges BLATT, DI-SALLE and MACPHAIL, sitting as a panel of three.

*David Shotel,* Assistant Attorney General, with him *Kenneth W. Makowski,* Acting Chief Counsel, and *Gerald Gornish,* Attorney General, for appellant.

*Mark L. Glosser,* with him *Robert G. Sable,* and *Lampl & Sable,* for appellee.

OPINION BY JUDGE MACPHAIL, August 21, 1979:

The Liquor Control Board (Board) appeals from an order of the Court of Common Pleas of Allegheny County reversing the Board's revocation of a liquor license issued to Honey Bear, Inc. (Honey Bear) and ordering the Board to renew Honey Bear's license. The only issue raised by the Board in this appeal is whether the order of the Court of Common Pleas is in error. Before deciding that issue, however, we must determine whether this case is controlled by Section 468 of the Liquor Code (Code), Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §4-468 which was in effect at the time the Board revoked Honey Bear's license or by Section 468(b.1) of the Code, added by Section 2 of the Act of November 26, 1978, P.L. 1389, which became effective while the case was on appeal. For the reasons which follow, we hold that Section 468 of the Code is the controlling statute and that the lower court erred as a matter of law in reversing the Board's revocation of Honey Bear's license.

The facts of this case, although not in dispute, are important to an understanding of our disposition. On October 14, 1976, a Petition for Dissolution of Honey Bear was filed in the Court of Common Pleas of Allegheny County by Bennie Andy, a shareholder, officer and creditor of Honey Bear alleging, *inter alia,* that Honey Bear was insolvent. The Court, on the same day, entered an order appointing a receiver pendente lite and on December 6, 1976 made that appointment permanent. In January, 1977, the Board notified Honey Bear through Andy that the Board had received information that the licensee was insolvent and that a citation to show cause why the license should not be suspended or revoked might issue. On February 21, 1977, following an exchange of correspondence with the Board, the receiver placed the license in safekeeping with the Board. On March 1,

1977, the Board issued a show cause citation why the license should not be revoked and fixed a hearing on the petition for April 29, 1977. On March 2, 1977, the receiver filed with the Board an application for renewal of the license.[1] On April 14, 1977, the receiver's application for renewal was denied by a letter from the Board. On April 29, the Board conducted a hearing on the show cause citation and on May 23, 1977 entered an order revoking the license. On May 30, 1977, the receiver appealed from the Board's denial of the application for renewal of the license. The receiver filed a timely appeal with the Allegheny County Court of Common Pleas from the Board's order of May 23, 1977 revoking the license. On August 15, 1977, the Court of Common Pleas of Allegheny County entered the order from which the Board now appeals.

At the time of Honey Bear's insolvency and for more than a year thereafter, Section 468 of the Code was in effect. That section read:

> (b) In the event that any person to whom a license shall have been issued under the provisions of this article shall become insolvent, ... the license of such person shall immediately terminate and be cancelled without any action on the part of the board, and there shall be no refund made or credit given for the unused portion of the license fee for the remainder of the license year for which said license was

---

[1] The lower court took no additional testimony. It found as a fact that the receiver had entered into an agreement for the sale of a license and that an application for the transfer of the license had been submitted to the Board on or about March 2, 1977. There is nothing in the record to indicate what action, if any, the Board took with respect to that application. In view of our holding in this case that the license ceased to exist after October 14, 1976, it is immaterial whether an application for transfer was filed subsequent thereto.

granted. Thereafter, no license shall be issued by the board for the premises wherein said license was conducted to any assignee, committee, trustee, receiver, or successor of such licensee, until a hearing has been held by the board as in the case of a new application for license. In all such cases, the board shall have the sole and final discretion as to the propriety of the issuance of a license for such premises and as to the time it shall issue and the period for which it shall be issued, and shall have the further power to exact conditions under which said license shall be conducted.

While this appeal was pending in this Court, Section 468(b.1) became effective. That Section provides that:

(b.1) In the event that any person to whom a license shall have been issued under the provisions of this article shall become insolvent, . . . the license of such person shall be immediately placed in safekeeping with the board for the balance of the term of the license and for an additional period of one year upon application to the board by the trustee, receiver, or assignee. The trustee, receiver, or assignee shall have, during said period of safekeeping, the same rights, benefits and obligations as to the license as the person to whom the license had been issued, including the right to transfer the license subject to the approval of the board. The license shall continue as a personal privilege granted by the board and nothing herein shall constitute the license as property.

Honey Bear argues that Section 468(b.1) is a procedural law rather than one affecting vested rights and, therefore, should be applied to any litigation pending at the time of its enactment. Honey Bear's statement of this general legal principle is correct.

*See Kuca v. Lehigh Valley Coal Co.*, 268 Pa. 163, 166, 110 A. 731, 732 (1920); *Universal Cyclops Steel Corp. v. Krawczynski*, 9 Pa. Commonwealth Ct. 176, 183, 305 A.2d 757, 761 (1973); *Penelope Club Liquor License Case*, 136 Pa. Superior Ct. 505, 513-14, 7 A.2d 558, 562 (1939). Its application of the principle to the facts of this case, however, is not correct.

Section 468 mandated that upon the insolvency of any person holding a liquor license "the license . . . shall immediately terminate and be cancelled without any action on the part of the board. . . ." Therefore, Honey Bear's license was terminated by operation of law on October 14, 1976, the date when the temporary receiver was appointed. The Board's subsequent hearing and order on the revocation of the license had no effect on the termination of the license as of October 14, 1976. The language of Section 468 is explicit that no action on the part of the Board is required to effectuate a termination or cancellation of the license. The Board's hearing on April 29 was not required procedurally or substantively and the order entered by the Board on May 23 was not necessary to revoke, suspend or cancel the subject license.

The situation here is analogous to the one we addressed in *Meyers v. The Board of Supervisors of Lower Makefield Township*, Pa. Commonwealth Ct. , 402 A.2d 278 (1979). *Meyers* involved the establishment of zoning standards which became effective after the case had been argued to us on appeal. There we held that because the standards applied only to actions before a Court of Common Pleas and because the case was no longer pending before such a court, the new standards would not be applied retroactively to the case on appeal. Here, Section 468(b.1) establishes the procedures to be followed when a liquor licensee becomes insolvent. In this case, Honey Bear had already become insolvent and its license had al-

ready been terminated by operation of law before the enactment of Section 468(b.1). Therefore, the Act cannot be applied retroactively to a license that no longer exists.

Honey Bear argues that even if the license was terminated on October 14, 1976, the Board is estopped from asserting the termination because it accepted the license for safekeeping on February 21, 1977, or, in the alternative, that the lower court's order of August 15, 1977 revived the license thereby making it subject to the standards set forth in Section 468(b.1). We agree with neither contention.

Because Honey Bear's license was terminated by operation of law on October 14, 1976, no license, in fact, existed on the date when the Board purported to accept it for safekeeping. Even were we to decide that the Board's acceptance of the license served to revive it, which we do not, such acceptance would not prevent the Board from revoking it upon a formal finding that Honey Bear was insolvent. The decision in *Whitford Liquor License Case*, 166 Pa. Superior Ct. 48, 70 A.2d 708 (1950) is instructive to us here.

In *Whitford*, the Board mistakenly issued a liquor license for a restaurant in a township where the full quota of licenses had already been issued. A year later, the Board refused to renew the license due to the quota limitation. In reversing the order of the Court of Quarter Sessions of Lackawanna County which had reversed the Board's decision to deny the license renewal, the Superior Court said:

> Under that explicit language [of Section 2 of the Quota Law, Act of June 24, 1939, P.L. 806, *as amended*, 47 P.S. §744-1002] the board was entirely without authority to grant a restaurant license for a place in South Abington Township. Granting the license was an illegal act, and the board had no power to perpetuate the illegality by renewing it.

*Id.*, 166 Pa. Superior Ct. at 50, 70 A.2d at 710. The Court specifically held that although the Board was without power to review the *propriety* of initially issuing the license, it did have the authority *to correct its errors* in doing so. Likewise, if the Board in the case before us had revived Honey Bear's liquor license by accepting it for safekeeping, it was an error of law for it to do so. *Whitford Liquor License Case, supra.* The Board could not be estopped, however, from taking further action. It had the authority to correct any error it might have made and here it would have done so by ordering revocation of the license after the April 29 hearing. The effect of the April 29 hearing, then, would have been to correct any error the Board might have committed in accepting the license for safekeeping.

Again, because Honey Bear's license had been terminated by operation of law on October 14, 1976, we hold that neither the lower court's order of August 15 nor the enactment of Section 468(b.1) revived it. Only a finding by the Board that Honey Bear was *not* insolvent could have made ineffective the termination.

Having determined that Section 468 of the Code controls this case, we must also conclude that the lower court erred as a matter of law in reversing the Board's revocation order. The termination of Honey Bear's liquor license was mandatory and automatic on the date of its insolvency. The Board, upon finding Honey Bear to be insolvent, affirmed the termination. Termination was not a discretionary option for the Board or for the Court. Once the Court found that Honey Bear was insolvent, it could only affirm the Board's revocation order. Its failure to do so constitutes an error of law.[2]

---

[2] Honey Bear also appealed from the Board's decision refusing to renew its license. The lower court, without discussing renewal,

For the foregoing reasons, the order of the Court of Common Pleas of Allegheny County is reversed and the order of the Liquor Control Board revoking the license of Honey Bear, Inc. is reinstated.

ORDER

AND Now, this 21st day of August, 1979, the order of the Court of Common Pleas of Allegheny County, Civil Division, at No. SA 319 of 1977, dated August 15, 1977, is reversed and the order of the Pennsylvania Liquor Control Board revoking the license of Honey Bear, Inc., dated May 23, 1977, is reinstated.

DISSENTING OPINION BY JUDGE DiSALLE:

I respectfully dissent. The majority indicates its agreement with Honey Bear's argument that Section 468(b.1) is a procedural law and that it should be applied to pending litigation. However, the majority concludes that the principle is not applicable here. I disagree. The majority holds that the license terminated on October 14, 1976 and that "no license, in fact, existed on the date the Board purported to accept it for safekeeping." However, the fact remains that the Board did accept the license for safekeeping; the Board did, on May 23, 1977, enter an order revoking the license; and the lower court did order the Board to renew the license on August 18, 1977. Metaphysical considerations aside, it is obvious that all of these

reversed the Board's revocation of the license and ordered the Board to renew it. Because we have reinstated the revocation order, we need not discuss in detail the renewal issue. We do note, however, that the Board's decision refusing to renew the license was proper. Because the license was terminated by law on October 14, 1976, by definition there was no license existing to be renewed in March, 1977. The statutory language in Section 468 which authorizes the Board to *issue* (not renew) a license "for the premises wherein said license was conducted" after a Board hearing was not followed by the receiver in the instant case.

actions dealt with an "existing" license. It seems clear to me that the 1978 amendment applies here and that the receiver should be permitted to transfer the license pursuant thereto. I fail to see what harm would result from our so deciding, and conceivably, the licensee's creditors would benefit therefrom. See my dissenting opinion in *Meyers v. The Board of Supervisors of Lower Makefield Township,* Pa. Commonwealth Ct. , 402 A.2d 278 (1979).