# The Gettysburg National Bank v. Slaybaugh

*Robert L. McQuaide*, for plaintiff.
*Kenneth L. Rotz*, for defendant.

SPICER, *P.J.*, December 10, 1982—Plaintiff, a banking institution, filed its action in replevin on May 24, 1982. Notice of intention to take a default judgment was given defendants June 29, 1982, and judgment was entered August 4, 1982. Although the complaint alleged the value of goods subject to the action, the judgment did not determine the money value of the property as is required by Pennsylvania Rule of Civil Procedure 1084(b)(2). The complaint did not allege special damages and the judgment did not determine such damages.

Plaintiff repossessed a Datsun truck in which plaintiff had a security interest on October 1, 1982. The value of the truck, according to the complaint, was $6500. Defendant John Slaybaugh (Slaybaugh) filed a petition to strike or open the judgment on October 12, 1982.

All facts have been established by stipulation. Exhibits referred to are in the complaint. Pertinent facts are:

On August 27, 1981, defendants owed plaintiff $5,171 as a balance on an existing loan (which originated on September 2, 1980). At that time, defendants made a further direct borrowing of $7,617.96, combined the two debts, and gave plaintiff a "collateral note" in the amount of $12,788.46. The note was to be paid as follows: "Principal payable on demand with interest on the unpaid balance payable on demand at the rate of 18 percent per annun (on 365/360 day basis)" Defendants also executed a "security agreement," granting plaintiff a security interest in a new (1981) Datsun truck and a used (1978) Yamaha motorcycle.[1] The security agreement also recited that the interest on defendants' debt was payable "monthly," with the "principal due on demand."

The proceeds of the new loan were to be paid by plaintiff to "Borrower & A-1 Motors, Inc. Chambersburg, PA 17201."

Slaybaugh's lawyer became aware of amendments to the Motor Vehicle Sales Finance Act (the act), 69 P.S. §601, specifically §621.1, on September 24, 1982. The act was amended effective June 18, 1982.

The act applies to installment sales of motor vehicles. Its definition of "person" includes a banking institution. Persons fitting the definitions of "installment seller," "sales finance company," and "collector repossesser' are subject to the act. The last classification is not germane to this case.

An installment seller is defined in §603 of the act.

---

1. The titles to the truck and motorcycle indicate that plaintiff is the first lienholder. Plaintiff's security interests are perfected.

Generally, it means anyone in the business of selling vehicles under installment sales contracts "or any legal successor in interest to such person." A "sales finance company" is one which is in "the business of financing or soliciting the financing of installment sales contracts made between other parties . . . . " The phrase includes those who acquire such agreements by discount, purchase, or assignment.

An "installment sale contract" is defined as one having the purpose or effect the sale of a motor vehicle "under which part or all of the price is payable in two or more scheduled payments subsequent to the making of such contract, or as to which the obligor undertakes to make two or more scheduled payments or deposits that can be used to pay part or all of the purchase price . . . "

The amendment to the act creates a condition precedent to an action to collect on or enforce an installment sale contract. The section provides:

A seller or holder may not accelerate the maturity of installment sales contract, commence any legal action or repossess without legal process unless the buyer is in default and unless the seller or holder shall provide the buyer with notice, sent by certified mail, to the buyer's last known addres or delivered personally to the residence of the buyer, informing the buyer (1) of his right to cure the default upon payment of the amount in default plus delinquency or deferral charges within twenty-one (21) days of the date of receipt of such notice, (2) the name, address and telephone number of the seller or holder, (3) the total amount due, including amount of delinquency charges, (4) the exact date by which the amount due must be paid, (5) the name, address and telephone number of the person to whom payment must be made, and (6) other

performance necessary to cure a default arising from other than nonpayment herein and the buyer is given the rights so specified. The seller or holder shall not be required to provide such notice more than once in any twelve (12) month period. The act of curing a default restores to the buyer his rights under the installment sales contract as though no default had occurred.

Slaybaugh contends that the judgment is defective on its face because plaintiff did not comply with Rule 1084 and did not comply with §621.1. He further contends that the judgment should be opened if not stricken.

It is true that the judgment technically does not comply with the rule last mentioned. However, the complaint did set a value. Value of property for purposes of judgment is almost always, and would have in this case been, determined "at the amount which plaintiff has asserted in his complaint." Goodrich-Amram 2d 1084(b):1 at 179. We will not strike the judgment for such a minor and technical defect. See 20 P.L.E. Judgments §103.

Noncompliance with §621.1 of the act is also not grounds to strike the judgment. The act establishes substantive rights for an installment buyer. It creates a condition precedent to maintenance of a legal action. The legislature did not make the act applicable to actions pending at the time of its enactment. It does not establish a procedure which that could easily be applied to this case. It establishes a requirement that must be met before a plaintiff can institute an action. This action was already in being when the amendment took effect. The amendment does not apply. See 1 Pa.C.S.A. §1926: Universal Cyclops Steel Corp. v. Krawczyzski, 9 Pa. Commonwealth Ct. 176, 305 A. 2d 757

(1973); Costa v. Lair, 241 Pa. Superior Ct. 517, 363 A. 2d 1313 (1976).

Slaybaugh's petition to open[2] can fare no better. The record does not establish that plaintiff's contract is subject to the act, even if the act were to apply otherwise. For purposes of this case, it has not been shown plaintiff was either a seller or a sales finance company. There is also no showing that the parties considered this obligation to be an installment sale contract.

Ostensibly, the loan was not an installment sale agreement. The principal was due on demand. Interest, which is not part of a purchase price, was alone payable in installments. There was no ostensible need to accelerate the maturity of the agreement since it was due on demand. There has been no showing of any connection between plaintiff and the seller of the truck.

An interesting case in this regard is Anderson v. Automobile Fund, 258 Pa. Superior Ct. 1, 391 A. 2d 642 (1978). In that case, a vehicle seller referred a buyer to a lending institution for a fee. The proceeds of the loan were payable, as they were here, to borrowers and to sellers jointly. The lending institution did not take a security interest in the vehicle. The lower court[3] entered summary judgment in favor of the lending institution holding it not subject to the act. The decision was affirmed by an equally divided Superior Court. Those in favor of reversal would have telescoped the transaction and treated

---

2. We recently discussed the equitable nature of a proceeding to open judgment in Nassif v. Harf, _____ Adams County Legal Journal _____ (No. 81-S-705, filed November 9, 1982).

3. We note a typographical error at 258 Pa. Superior Ct. 10, _____ A. 2d _____, wherein the court was called "the loser court." A Freudian slip, perhaps?

the lending institution's loan as part of the transaction of sale. There has been no showing of any involvement by the instant plaintiff in the sale to Slaybaugh. Therefore, there could be no telescoping.

We hasten to point out we are not holding that all a seller or sales finance company need do to evade the act is to make obligations payable on demand. If it can be shown that the actual arrangement was for installment payments of the purchase price, it might very well be the act would apply.

We will save that decision for another day. That is not the case before us.

The attached order will be entered.

## ORDER

And now, December 10, 1982, the petition to open and/or strike the judgment is denied.