IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Consol PA Coal Company/Bailey    :
Mine Extension and East Coast    :
Risk Management, LLC,    :
          Petitioners    :
    :   No. 135 C.D. 2017
       v.    :
    :   Submitted: July 14, 2017
Workers' Compensation  Appeal    :
Board (Johnson),    :
          Respondent    :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                  FILED: October 24, 2017

Consol PA Coal Company/Bailey Mine Extension and East Coast Risk Management, LLC (collectively, Employer) petitions for review of the January 13, 2017 decision of the Workers' Compensation Appeal Board (Board), which affirmed a workers' compensation judge's (WCJ) determination granting the claim petition filed by Jay W. Johnson (Claimant).

**Facts and Procedural History**

Claimant worked full-time as a laborer in the coal mining industry beginning in 1974.  He began working as an underground miner and continued to work in that capacity until 1999, when he began working above ground in the Bailey

Preparation Plant as a production and maintenance laborer. (Reproduced Record (R.R.) at 157-59.) On August 28, 2014, Claimant filed a claim petition, alleging that he suffered a work injury when he aggravated a pre-existing degenerative condition in his left wrist. He further alleged that, as a result of the work injury, he suffered a period of temporary, total disability beginning on July 17, 2014. Claimant requested indemnity benefits, the payment of certain medical expenses, as well as the payment of attorney's fees. Employer filed an answer, denying the material allegations of Claimant's petition. The matter was assigned to a WCJ, who conducted multiple hearings. (WCJ's Findings of Fact Nos. 1-2.)

At these hearings, Claimant testified that he worked as a production and maintenance laborer, which included duties such as: performing routine maintenance chores; rotating 70 to 80 sift bin holders every week; working on large equipment; and a significant amount of shoveling coal. According to Claimant, he met with Dean Sotereanos, M.D., on October 31, 2012, for treatment to his left wrist and received several cortisone injections over the course of a few months that abated his wrist pain for a time, although Claimant clarified that he experienced pain to his left wrist prior to meeting with Dr. Sotereanos in October 2012. (WCJ's Finding of Fact No. 3(a)-(c).)

Claimant continued to perform his regular duties subsequent to his meeting with Dr. Sotereanos until June 9, 2014, when a massive coal spill occurred in the plant. According to Claimant, he shoveled coal for a large part of his shift and, after shoveling for approximately four or five hours, his shovel got caught on a bolt and caused Claimant's wrist to bend back. Claimant explained that his wrist became swollen and that he later reported the injury. After this event and until Claimant underwent wrist surgery on July 17, 2014, Claimant was unable to perform the heavy

2

lifting aspects of his job; however, Claimant noted that his supervisor was agreeable to this arrangement during the limited period. According to Claimant, he continued to treat with Dr. Sotereanos after the surgeries and he continued to experience discomfort in his wrist. Specifically, Claimant testified that his wrist hurts all the time and that he has very limited motion in the same. (WCJ's Finding of Fact No. 3(d)-(e), (k).)

Dr. Sotereanos, a board-certified physician in orthopedic surgery, testified that he first saw Claimant in October 2012, and performed a physical evaluation. According to Dr. Sotereanos, Claimant's wrist was significantly swollen and he experienced pain with very limited range of motion. Dr. Sotereanos stated that he obtained x-rays of Claimant's wrist, which indicated a symptomatic left wrist osteoarthritis, i.e., otherwise known as a SLAC wrist condition. As such, Dr. Sotereanos began treating Claimant with cortisone injections, which continued until approximately April of 2014. In April 2014, another x-ray was performed showing findings consistent with the previous x-ray, i.e., SLAC wrist condition. At the time, Claimant's wrist was still very swollen so he scheduled surgery with Dr. Sotereanos. On July 17, 2014, Dr. Sotereanos performed a partial fusion of Claimant's wrist and, on September 9, 2014, Dr. Sotereanos performed another procedure where he removed three pins that were inserted during the initial surgery. (WCJ's Finding of Fact No. 6.)

Dr. Sotereanos opined that Claimant suffered from SLAC wrist disease. According to Dr. Sotereanos, the cause of Claimant's condition was either an acute event or an insidious process resulting from the repeated use of the wrist over the course of many years. He testified that Claimant was unable to work since the surgery was performed on July 17, 2014, but noted that he believed Claimant could return in a light-duty capacity after approximately six months. However, Dr. Sotereanos opined that Claimant could never return to a heavy laboring position and explained that doing so

3

would lead to the destruction of Claimant's left wrist. Dr. Sotereanos further explained that Claimant's SLAC condition could occur without trauma, noting that it could be a progressive condition. He further opined that there was a nexus between the heavy labor that Claimant performed at work and his SLAC degenerative condition. *Id.*

Trenton Gause, M.D., a board-certified physician in orthopedic surgery, testified that he performed an evaluation of Claimant on January 7, 2015, at Employer's request. According to Dr. Gause, Claimant's range of motion in his left wrist was reduced consistent with the expected outcome of the surgery Dr. Sotereanos performed. Dr. Gause explained that Claimant exhibited no atrophy and he could make a complete fist. Similarly, Dr. Gause noted that there was no swelling and Claimant's sensation was normal. Dr. Gause opined that Claimant suffered from a pre-existing SLAC wrist deformity. Dr. Gause stated that no traumatic event caused Claimant's condition, that his condition was purely degenerative, and that Claimant's condition was unrelated to the heavy laboring duties he performed at work. Dr. Gause noted that, as of January 7, 2015, Claimant was not able to perform his regular work duties; however, he clarified that this was due solely to degenerative changes in his wrist and not the work he performed. (WCJ's Finding of Fact No. 7.)

By decision circulated November 5, 2015, the WCJ granted Claimant's claim petition, reasoning that Claimant established that his work duties aggravated his pre-existing degenerative condition to the point that surgery was required, rendering Claimant totally disabled from that date. The WCJ found Claimant and Dr. Sotereanos credible and rejected Dr. Gause's opinion to the extent it conflicted with that of Dr. Sotereanos.

Employer appealed the WCJ's decision to the Board, arguing that the WCJ's findings of fact were not supported by substantial evidence. Employer also

4

asserted that the WCJ erred in: relying on Dr. Sotereanos's opinion to support the conclusion that Claimant sustained a work-related injury; failing to make any findings of fact regarding the duration and extent of Claimant's disability; awarding ongoing disability benefits; and failing to make any findings of fact or conclusions of law regarding notice. By opinion and order dated July 21, 2016, the Board affirmed the WCJ's decision.[1] Employer thereafter filed a petition for review with this Court.

**Discussion**

On appeal,[2] Employer argues that the Board erred as a matter of law in affirming the WCJ's decision when the WCJ: failed to make findings of fact regarding the extent and duration of Claimant's disability; erred in awarding Claimant ongoing disability benefits; and failed to apply the proper legal principles in determining that Claimant's medical evidence was sufficient to support his disability. Employer contends that, at the very least, it is entitled to a suspension of Claimant's benefits six months' post-surgery because the "fear that arthritic abnormalities may be worsened by future employment is insufficient as a matter of law to support an award of ongoing benefits." (Brief for Employer at 19.)

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.),* 698 A.2d

---

[1] The Board subsequently granted Employer's petition for rehearing. Nevertheless, by decision dated January 13, 2017, the Board reaffirmed its previous decision affirming the WCJ.

[2] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704.

1378, 1381 (Pa. Cmwlth. 1997), *appeal denied*, 718 A.2d 787 (Pa. 1998). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id.* The WCJ's findings will not be disturbed on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund),* 578 A.2d 1016, 1018 (Pa. Cmwlth.), *appeal denied*, 592 A.2d 46 (Pa. 1990). Moreover, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

**Extent and Duration of Claimant's Disability**

Employer first argues that the WCJ failed to make findings of fact "regarding the extent and duration of disability." (Brief for Employer at 8.) More specifically, Employer alleges that Dr. Sotereanos "was unable to state, and the Workers' Compensation Judge did not find, Claimant's arthritis was caused by work" because Dr. Sotereanos only said that work "may" have caused it; Claimant would have needed fusion surgery on his wrist regardless of work; Claimant's x-rays did not indicate an aggravation; and there "were other factors, including smoking and familial, which are responsible for Claimant's type of arthritis" that Dr. Sotereanos "never explored with Claimant." (Brief for Employer at 11-12.) Further, Employer contends

6

that Dr. Sotereanos did not understand Claimant's job duties, and, therefore, the findings of fact were not supported by substantial, competent evidence.

Here, the WCJ found both Claimant's and Dr. Sotereanos' testimony credible over the testimony from Dr. Gause. (WCJ's Findings of Fact Nos. 3, 6, 8.) In finding that Claimant was eligible for benefits, the WCJ specifically noted that,

> It was Dr. Sotereanos' opinion that the claimant had left wrist end stage arthritis which necessitated the carpal fusion, or SLAC wrist disease. The cause of this condition was either an acute event or some type of insidious process with use of the left wrist repeatedly over the course of years. By this repetitive activity, Dr. Sotereanos was referring to the heavy type of labor the claimant did at work.
>
> Dr. Sotereanos believed that as of the first time he saw the claimant for his left wrist problems on October 31, 2012, that there was a relationship between the heavy labor that the claimant was performing at work and the SLAC degenerative condition.

(WCJ's Finding of Fact No. 6.) Further, after considering all of the evidence, the WCJ found as fact that,

> I have carefully considered all of the evidence of record, both medical and lay, and find that the work the claimant performed as a laborer in the preparation plant at Bailey Mine Prep Plant did aggravate the underlying degenerative condition that the claimant had in his left wrist causing it to be more symptomatic than it would have been otherwise, thus, leading to Dr. Sotereanos' surgical intervention on July 17, 2014 which caused the claimant to be totally disabled from that date. In making this finding of fact, I rely on the competent, credible and substantial medical opinion rendered in this matter by Dr. Sotereanos. I have carefully considered the opinion of Dr. Gause, however, to the extent Dr. Gause's opinion contradicts the opinion of Dr. Sotereanos, I reject the opinion of Dr. Gause in light of the opinion of Dr. Sotereanos upon whom I rely. Initially, it should be noted, that Dr. Sotereanos and Dr. Gause agree on

7

almost all of the aspects of this case except for what role the claimant's work activities played. It's Dr. Sotereanos' opinion that the heavy duty work that the claimant performed at the prep plant aggravated the arthritic condition causing it to be more symptomatic and it was Dr. Gause's opinion that the heavy duty work that the claimant performed at the prep plant had no bearing whatsoever on the symptoms that the claimant was experiencing and when the pain got to the point that the claimant felt he must undergo the surgery on July 17, 2014, this just represented of [sic] the normal progression of the disease. It is noted, however, that Dr. Sotereanos did determine based upon the x-rays he took on the claimant's wrist from October 31, 2012 until the surgical intervention in 2014 that the claimant's condition had progressed more rapidly than he would have expected had the claimant not been performing heavy duty work and I found claimant's testimony credible that the job duties he did perform while working in the preparation plant caused an increase in his left wrist pain.

(WCJ's Finding of Fact No. 8.) The WCJ then concluded that, "[C]laimant has established that the work activities that he performed through July 16, 2014, aggravated his pre-existing degenerative condition to the point that he required surgical intervention." (WCJ's Conclusion of Law No. 2.) Contrary to Employer's argument, the WCJ did indeed make findings of fact that established the extent and duration of disability, as well as its causation in the nature of an aggravation of Claimant's pre-existing arthritic condition.

### Ongoing Disability/Sufficiency of Medical Evidence

Employer next argues that the Board and WCJ failed to apply the proper legal principles when they determined that Claimant's medical evidence was sufficient "as a matter of law to support work-related disability or ongoing disability." (Brief for

8

Employer at 8-9.) More specifically, Employer contends that Claimant's disability was the result of a pre-existing and non-work-related condition, neither of which is compensable under the Pennsylvania Workers' Compensation Act.[3] (Brief for Employer at 9.) Employer argues that Claimant would have required fusion surgery on his wrist regardless of work, that Claimant's x-rays did not indicate an aggravation, and that there "were other factors, including smoking and familial, which are responsible for Claimant's type of arthritis" that Dr. Sotereanos "never explored with Claimant." (Brief for Employer at 11-12.) Employer further contends that Dr. Sotereanos did not understand Claimant's job duties, and, therefore, the findings of fact were not supported by substantial, competent evidence since "Dr. Sotereanos' medical opinion does not rise to the level of an unequivocal medical opinion necessary to support a finding of causation." (Brief for Employer at 12-13.)

Employer posits that the decision was based, in part, on Dr. Sotereanos' fear of future arthritic problems, that Claimant "has the ability to perform his regular job duties," and that a future reoccurrence of a condition "is not supportive of ongoing disability." (Brief for Employer at 16.) Employer argues that "fear of aggravation of pre-existing arthritis" is not a compensable disability. (Brief for Employer at 17.) Employer contends that in order for a claimant to be eligible for ongoing benefits after symptoms disappear, "he must demonstrate the underlying condition was caused by his work and not merely show that his work aggravated a pre-existing non-work-related condition." (Brief for Employer at 18.) Employer further argues that Dr. Sotereanos testified that Claimant's condition at the time of his deposition was better than it was prior to his surgery, that Claimant had "good movement of his wrist and a solid fusion,"

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

9

and that he was not released for heavy work because of "future problems associated with a non-work-related condition." (Brief for Employer at 18-19.)

The WCJ's findings will not be disturbed on appeal if there is substantial evidence in the record to support the findings, a well-established standard in Pennsylvania workers' compensation cases dating back to *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board (Krawczynski)*, 305 A.2d 757 (Pa. Cmwlth. 1973). Further, the WCJ has discretion in determining what testimony to credit and what to reject, including that of medical witnesses. *Lombardo*, 698 A.2d at 1381.

Claimant and Dr. Sotereanos offered credible testimony regarding the nature of Claimant's ongoing disability. Dr. Sotereanos' conclusion that Claimant had severe arthritis consistent with a SLAC wrist condition was based on Claimant's limited range of motion, the swelling in Claimant's wrist, multiple x-rays, multiple cortisone injection treatments, a partial fusion surgery, and another procedure that removed the pins inserted after Claimant's first surgery. When questioned on the causation of Claimant's disability and diagnosis, Dr. Sotereanos testified,

> A. The diagnosis in layman's terms is left wrist end-stage arthritis, that necessitated the carpal fusion, or SLAC wrist disease.
> Q. Do you have an opinion as to what has caused that problem?
> A. The causation was either an acute event of some type or in the insidious use of the left wrist repetitively over the course of years.
> Q. . . . in what capacity would he use the wrist to cause that problem to develop?
> A. In the capacity of a heavy laborer.

(R.R. at 220-221.) Employer posits that Claimant's disability was the result of a non-work-related, pre-existing condition. However, on cross-examination, Dr. Sotereanos

10

testified how Claimant's condition differed from typical arthritis, specifically explaining how Claimant's progressed as quickly as it did, testifying that:

> Q. And that arthritic condition is SLAC, and it could progress. And, in fact, you would expect it to progress; would you not?
> A. You would expect it to slowly progress in most circumstances. In his case, his pain progressed rather rapidly.
>
> . . .
>
> Q. Okay. And that Watson condition, this SLAC condition, there's a predictable progression; right?
> A. The progression, as I said earlier, is usually slower than what occurred in his case.
> Q. But it is predictable, is it not, progression even without - -
> A. The radiographic stages are predictable, but it is certainly hastened with chronic, heavy work.
> Q. Is it hastened with any use of the wrist?
> A. Well, if he were a beautician, he probably wouldn't have had a fusion yet.
> Q. And you're not stating with a reasonable degree of medical certainty that that degenerative condition was caused by his work; is that correct?
> A. I'm stating within a reasonable degree of certainty that that condition was aggravated by his work, and it may have been caused by his work.… I'm saying that it may have been caused by his work within a reasonable degree of medical certainty.
> Q. And the causal relationship that you're talking about is aggravation?
> A. For certain, yes.

(R.R at 229, 232, 234-35.)

Employer argues that Dr. Sotereanos did not have a clear understanding of Claimant's job functions, specifically stating that Dr. Sotereanos believed Claimant had to support himself with his wrist because he had to work on his knees, which was

11

inaccurate as to both mine work and the work that Claimant performed in the above-ground plant. (Brief of Employer at 12-13.) Employer further contends that Dr. Sotereanos "felt Claimant would have to work on his knees while supporting himself with his wrists, if he returned to his regular job . . . [and that] doing such work would lead to further problems with Claimant's wrist." (Brief of Employer at 13.) Employer contends that, due to this inaccuracy, Dr. Sotereanos was unable to offer competent medical testimony. However, Dr. Sotereanos' testimony shows otherwise. When questioned, Dr. Sotereanos testified:

> Q. And what's your understanding of what [Claimant] did from a physical standpoint?
> A. I've known Jay for a significant period of time, and he clearly stated that for – I can't remember the exact number of years – but approximately 20 years, he worked underground as a coal miner which involved heavy labor. For the past 8 to 10 years, he worked aboveground, but in a capacity that still required heavy labor.

(R.R. at 219.) Dr. Sotereanos further testified:

> Q. And he didn't work in a mine in the last ten years?
> A. Right.
> Q. He worked in a plant?
> A. Correct. I'm aware.

(R.R. at 244.) Here, contrary to Employer's argument, Dr. Sotereanos recognized that Claimant did not work in a mine, but rather, in an above-ground plant. Therefore, the WCJ did not err in relying on the competent and credible testimony of Dr. Sotereanos in rendering his decision.

Employer next contends that Claimant's disability was based, in part, on a fear of future arthritic problems and that Claimant currently has the ability to perform regular job duties, both which are not supportive of ongoing disability. Employer relies

12

on *Bethlehem Steel Corporation v. Workers' Compensation Appeal Board (Baxter)*, 708 A.2d 801 (Pa. 1998), to argue that where an underlying condition is not work-related and the employee's condition returns to baseline, an employee is not entitled to benefits if the pre-existing condition was aggravated. In *Baxter*, the Pennsylvania Supreme Court held that an employee is not entitled to benefits after an employee fully recovers from an exacerbated pre-existing condition. *Id.* at 804. However, the Court also stated that if Baxter had introduced medical evidence that his condition "resulted in an ongoing condition," he would have been eligible for benefits. *Id.*

Here, Dr. Sotereanos testified that Claimant was likely to suffer more injuries if he returned to his pre-injury position. However, Dr. Sotereanos stated that this was because Claimant's surgery changed the anatomy of his wrist. Dr. Sotereanos was questioned as follows:

> Q. My question to you is if he was to return to a heavy-duty job, does the change in the anatomy make it more likely or less likely for the chance of developing progressive arthritic changes in the future?
> A. Much more likely.
> Q. Why is that?
> A. Because the cartilage – even in the joints that remain that we preserved, the cartilage is not normal. So instead of having a thick cartilage shell around the remaining bones that he articulates with, he has a thin cartilage shell, and that thin cartilage shell is at risk of being abrased off and requiring a complete fusion.

(R.R. at 245.) Unlike in *Baxter*, the anatomy of Claimant's wrist had been permanently changed, rendering him unable to return to his prior position as a heavy-duty laborer, and Claimant's condition here never returned to baseline. Therefore, the WCJ did not err in awarding Claimant ongoing benefits for his disability.

**Conclusion**

The WCJ made findings of fact that established the extent and duration of disability, as well as its causation in the nature of an aggravation of Claimant's pre-existing arthritic condition. Additionally, the WCJ applied the proper legal principles in determining that Claimant's competent medical evidence was sufficient to support an award of ongoing disability benefits. Thus, Claimant established all of the necessary elements to support his claim petition and the Board did not err as a matter of law in affirming the WCJ's decision.

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Consol PA Coal Company/Bailey : 
Mine Extension and East Coast : 
Risk Management, LLC, : 
              Petitioners : 
              :   No. 135 C.D. 2017
          v. : 
              : 
Workers' Compensation Appeal : 
Board (Johnson), : 
            Respondent : 

## *ORDER*

AND NOW, this 24th day of October, 2017, the order of the Workers' Compensation Appeal Board, dated January 13, 2017 is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge