Bethlehem Steel Corporation, Petitioner *v.* Workmen's Compensation Appeal Board (George R. Krause), Respondents.

Submitted on briefs May 9, 1983, to Judges CRAIG, MACPHAIL and BARBIERI, sitting as a panel of three.

*Harold W. Budding,* for petitioner.

*William E. Schadler,* for respondent, George R. Krause.

Opinion by Judge Barbieri, October 7, 1983:

This Workmen's Compensation case was initiated by petition of the Claimant, George R. Krause, filed on May 1, 1978, originally on a Claim Petition Form, but amended at a hearing before the referee to include alternate treatment as a Petition to Set Aside a Final Receipt "depending on how the record comes out."

Actually, Claimant had been paid compensation under an agreement admitting liability for total disability from injuries suffered on December 21, 1973. Thereafter, Claimant signed a Final Receipt dated August 7, 1974, for compensation from the date of injury to May 28, 1974, as of which latter date Claimant returned to work with disability restrictions fixed by the medical examiner of the employer, Bethlehem Steel Corporation. In this proceeding, Claimant seeks restoration of benefits following a layoff on June 8, 1977. The referee, ruling that the Petition should be treated as a Petition to Set Aside the Final Receipt, granted the request to set aside the final receipt and ordered the resumption of payments as of June 8, 1977 for total disability. On appeal by Bethlehem Steel Corporation, the Workmen's Compensation Appeal Board affirmed. This appeal followed. We will affirm.

Bethlehem Steel Corporation raises four questions, two of which are so obviously lacking in merit as to warrant no serious consideration by this Court. For example, that the referee and the Board erred in assessing counsel fees of twenty percent against the employer, when the order could not be clearer that no counsel fees were assessed against the employer, but the customary counsel fee of twenty percent was awarded to counsel, specifically to be paid out "of the compensation awarded to the claimant."

We will address the questions raised as to setting aside the final receipt: (1) whether there is support in

the testimony for the referee's tenth finding of fact that the "final receipt was executed by the claimant-petitioner by reason of intentional and/or unintentional deception," and (2) whether or not the two year limitation in Section 434 of The Pennsylvania Workmen's Compensation Act (Act),[1] commencing as of the date when the final receipt was signed, should be interposed as a bar to the relief otherwise due the claimant.

Referring to the record, we find that the testimony in support of the referee's findings is virtually uncontradicted. Claimant returned to work on the date stated in the final receipt, May 28, 1974, not without disability and not as is stated in the final receipt without any loss in earning power, but with major disability restrictions imposed by Bethlehem's physician, Dr. Hauer. Dr. Hauer was not called, nor was any other medical witness or medical testimony presented by Bethlehem. Claimant's so-called layoff as of June 8, 1977, was not due to lack of work, but was due to lack of work that would fit into the company physician's limitations imposed because of Claimant's continuing disability. Incidentally, this was not Claimant's first layoff of this type. He was laid off on May 13, 1976 and returned to work for the period from January 17 to March 11, 1977 and was in layoff again until he returned to work for the period from May 23, 1977 to June 3, 1977.

Furthermore, Claimant received unemployment compensation payments, with supplements by Bethlehem during the layoff periods. It seems relevant that when Claimant returned for treatment to Dr. Raymond M. Dorsch, who is Board Certified as an orthopedic physician, in June of 1977, he was seen to have significant trouble with his back requiring surgery.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §1001.

He returned to Bethlehem to discuss his disability situation and the following conversation took place between Claimant and Lyle A. Myers, Bethlehem's supervisor of workmen's compensation cases and pensions:

Q. What was the nature of that conversation?

A. Well, after I had seen Dr. Dorsch, Dr. Dorsch had asked what I was doing and I told him I was laid off at the time and he said that was good because I wasn't able to work anyway so I talked to Lyle Myers about it, what Dr. Dorsch told me. I didn't want to take a chance and do anything wrong with the state Unemployment benefits and at that time he said I was able to draw them and I did so up until October when I was admitted to the hospital.

Q. Had you specifically mentioned to Mr. Myers that you felt that maybe you should be receiving Workmen's Compensation?

A. I asked him what would be the best thing, sick pay, compensation or what and he said at this time I could still go on Unemployment.

Lyle Myers was called by Bethlehem, but was not questioned, nor did he in any way contradict statements by Claimant in the above quotation.

Dr. Raymond M. Dorsch, Claimant's attending orthopedic surgeon, was called by Claimant and testified that Claimant's disabling condition originated with his back injury at work, which developed into a herniated intervertebral disc, eventually requiring surgery. The surgery was in January of 1974. Claimant was last seen by the doctor in May of 1974 until he returned on June 9, 1977, when he was having "significant trouble," requiring hospitalization and another operation in April of 1978. Dr. Dorsch, questioned as

to the causal relationship of all of these conditions to Claimant's "work-related injury," replied as follows:

Not as a new problem. My feeling, after having operated on him again was that there was a clear connection between the recent operation and the current problem and the old problem and he did not have a new herniated disc. He had the nerve root that was affected by the original herniated disc, considerably bound down by scar tissue which is the result of previous problems and evidence on x-ray of what we call degenerative change in the area, so that we felt that this was an exacerbation, a flare-up of the old problem, not due to a new injury but simply an extension of the problem that had been there before.

Claimant's testimony as to the signing of the Final Receipt amply supports the referee's findings, particularly that it was signed on August 7, 1974 on the basis that Claimant had been underpaid; that he was owed some money and was simply signing for that check; that "I just understood that I was signing for a check that they underpaid me."

Claimant testified further that after signing the Final Receipt he still had physical problems and worked only under the conditions limiting his activity which were fixed by Bethlehem's medical advisor, the limitations described as "no lifting, pushing, pulling over a certain weight. I think it was thirty-five pounds at that time and no frequent bending or any twisting, something of that order."

We are aware, of course, that the limitation in Section 434 is a bar on the right to set aside a final receipt, absent fraud or deception. *Climax Molybdenum Co. v. Workmen's Compensation Appeal Board,* 15 Pa. Commonwealth Ct. 249, 325 A.2d 822 (1974). Nevertheless, we have no difficulty in sustaining the ref-

eree's tenth finding that "[t]he Final Receipt was executed by the claimant-petitioner by reason of intentional and/or unintentional deception." Here we have the situation where the Claimant returned to work in May of 1974 and the employer did not present a Final Receipt then because of the clear knowledge that Claimant had not recovered from his disabling injuries. While he continued at the limited employment prescribed by the company physician, in this clear state of serious and continuing disability, a Final Receipt certifying his recovery from his injuries was procured at a time when the clear dictates of the Workmen's Compensation Law required that, at most, there should have been a supplemental agreement establishing a suspension of payments; only then if his wages were equivalent to those paid prior to his injury.

Also, as noted above, within the three year limitation in amended Section 434, (two years at the time when the Final Receipt was signed)[2] Claimant was retained on unemployment compensation, although defendant had knowledge from Claimant that his absence from work was solely due to disability and the restrictions on his work capacity imposed by the company physician. In fact, Claimant testified that he "was receiving state unemployment benefits and also supplemental unemployment benefits from Bethlehem Steel."

While we need go no further than the referee and Board did, it seems obvious to us that the substitution of unemployment compensation for workmen's compensation, knowingly as in this case, inducing inaction

---

[2] A statutory change extending a limitation period, being procedural, will be applied to benefit the claimant in a case pending before the change was enacted. *Kuca v. Lehigh Valley Coal Co.*, 268 Pa. 163, 110 A. 731 (1920); *Universal Cyclops Steel Corp. v. Krawcznski*, 9 Pa. Commonwealth Ct. 176, 305 A.2d 757 (1973).

and delay in petitioning under Section 434, must result in tolling the filing limitation. *Scranton v. Workmen's Compensation Appeal Board,* 10 Pa. Commonwealth Ct. 424, 310 A.2d 701 (1973) ; *Carpinelli v. Penn Steel Castings Co.,* 209 Pa. Superior Ct. 390, 227 A.2d 912 (1967). It is our conclusion, therefore, that since the referee's findings are supported by substantial and uncontradicted evidence in the record, the decision of the Workmen's Compensation Appeal Board must be affirmed.

ORDER

Now, October 7, 1983, the order of the Workmen's Compensation Appeal Board dated April 23, 1981, is affirmed.