506 A.2d 964

Duraloy Blaw-Knox, Inc., and Travelers Insurance Company, Petitioners *v.* Workmen's Compensation Appeal Board (Boring), Respondents.

Submitted on briefs September 12, 1985, to Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

David A. Cicola, William K. Herrington & Associates, for petitioners.

John W. McTiernan, McArdle, Caroselli, Spagnolli & Beachler, for respondent, Budd Boring.

OPINION BY JUDGE DOYLE, March 18, 1986:

This is an appeal by Duraloy Blaw-Knox, Inc. (Employer) and Travelers Insurance Company, Employer's insurer, from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's decision sustaining the petition to set aside the final receipt of Budd Boring (Claimant).

Claimant was employed by Employer as an assistant ladleman on December 26, 1975, on which date he suf-

fered a low back injury while in the scope of his employment.[1] Payments were made pursuant to a notice of compensation payable and a final receipt was executed on January 6, 1976. In a supplemental agreement dated December 7, 1978 the parties acknowledged a recurrence of total disability as of November 17, 1978. Claimant then returned to work on June 25, 1979 at which point he signed a final receipt acknowledging cessation of all disability as a result of the December, 1975 injury. Claimant worked until he was laid off on October 12, 1979. On October 26, 1981 Claimant filed a petition to set aside the June, 1979 final receipt. At the hearing Claimant testified that upon return to work in June, 1979 he continued to have low back pain and that his doctor had released him to do light duty work. Nonetheless, Claimant was assigned to a grinder's job, which job required him to lift a large grinding machine and manipulate steel plates weighing between 100 and 125 pounds. Claimant also presented the deposition testimony of Dr. Gerald I. Schor, who examined Claimant on February 11, 1982. Dr. Schor stated that Claimant suffered from a ligamentous injury of his low back related to the December 1975 injury and that the ligamentous injury disabled Claimant from performing the duties of assistant ladleman and grinder *as of the date of his examination.* The doctor did not testify that Claimant was suffering from a residual disability at the time Claimant signed the final receipt in June of 1979. The referee, finding that Claimant *again became disabled* on October 12, 1979, (the date Claimant was laid off) ruled in favor of Claimant and the Board affirmed.

---

[1] The referee indicated that Claimant initially alleged that his original injury occurred in November, 1975 and later amended his petition to reflect that the injury occurred on October 26, 1975. The Notes of Testimony utilize the date of December 26, 1975 as the date of the injury and this is the date the referee found that the

Preliminarily we must concern ourselves with the nature of the action here appealed. While Claimant in fact filed a petition for relief under Section 434 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1001 (Act) (setting aside a final receipt) the petition itself uses language indicating that what he actually sought was compensation for a *recurrence* of the 1975 injury pursuant to Section 413 of the Act, 77 P.S. §772. Moreover, Employer's answer to this petition states that Employer denies that Claimant's injury has "recurred." In addition, the referee made findings relating to recurrence of the earlier disability. Yet, his conclusion is that the final receipt should be set aside.

The determination of which remedy Claimant sought (to set aside the final receipt or to achieve reinstatement of benefits because of a recurrence of prior disability) is important because the elements to be proven are different. We said in *Ferguson v. Workmen's Compensation Appeal Board,* 55 Pa. Commonwealth Ct. 394, 396, 423 A.2d 63, 64 (1980):

> Where a claimant seeks to set aside a final receipt, the burden is upon him to prove by clear and convincing evidence that all disability attributable to the original injury had not terminated when the final receipt was executed. . . . Moreover, where the claimant returns to work with no loss of earning power and no obvious residual disability, the clear and convincing evidence required of claimant must take the form of unequivocal medical testimony that the current

injury occurred. The Board utilized November 19, 1975 as the date of the original injury. Fortunately, the fact of the original injury is not in issue and any one of the above dates would suffice as a prior injury. Hence a remand for clarification on this point is not needed.

disability existed at the time the final receipt was signed. (Citations omitted.)

Although in *Sheibley v. Workmen's Compensation Appeal Board (ARA Food Services Co.)*, 86 Pa. Commonwealth Ct. 28, 483 A.2d 593 (1984), we held that under an amendment to Section 434 the burden of proof in petitions to set aside final receipts is now sufficient credible competent medical evidence rather than clear and convincing evidence,[2] the other requirments of *Ferguson* still stand. Thus, a claimant must still demonstrate, albeit by a lesser degree of evidence, that his disability had not terminated when he signed the final receipt. *Where the claimant has no loss of earning power and no obvious disability, unequivocal medical evidence is still needed. Ferguson.* As noted earlier, Claimant's doctor never testified as to Claimant's medical condition on the date he signed the final receipt. Thus, under *Ferguson,* unless Claimant had *both* a loss of earning power and an obvious disability upon his return to work, he has not met his burden. Claimant himself testified that while he was to return to light duties, he in fact did not do so. He also testified that he worked continuously upon his return, that he did strenuous duties, and that he made no complaint of pain to Employer. Thus upon his return to work he had neither loss of earning power nor any obvious disability.

Employer in order to overcome the gaps in Claimant's evidence cites *Robbins v. Workmen's Compensation Appeal Board (Donald Acor Trucking)*, 78 Pa. Commonwealth Ct. 144, 466 A.2d 1141 (1983), for the broad proposition that it is unnecessary to produce medical evidence that a claimant was disabled on the

---

[2] We note that the Board issued its determination prior to *Sheibley* and hence used the clear and convincing standard as the burden of proof in a petition to set aside a final receipt.

exact date of the signing of a final receipt. A close reading of *Robbins,* where the receipt was signed on July 3, 1979, reveals that that case was vastly different from the instant one. In *Robbins* the claimant's doctor, who treated Robbins' foot injury, described Robbins' medical condition during the period from June 15, 1978 through May 5, 1980 by testifying that Robbins underwent surgery on April 9, 1979, that he was in a cast until June 11, 1979, and that he was required to use crutches until September 1979. While in *Robbins* the doctor did not specifically testify as to claimant's condition on the date he signed the final receipt, *i.e.,* July 3, 1979, we said:

> Of course it was not necessary to produce medical evidence that the claimant was disabled on the exact date, July 3, 1979, he signed the final receipt; this fact is subsumed in the testimony that he was disabled from a date long prior to and long after July 3, 1979.

*Id.* at 148, 466 A.2d at 1143.

*Robbins* is a case where there was an obvious disability on the date the final receipt was signed.

In the instant case, Dr. Schor's testimony did not indicate an ongoing disability both prior and subsequent to the date Claimant signed the final receipt. Dr. Schor said only that on the date he examined Claimant, Claimant had ligamentous injury to his lower back and that the cause of this injury was the December 1975 injury.[3] Thus, *Robbins* is not helpful.

---

[3] The relevant portions of Dr. Schor's deposition read as follows:

> Q [By Claimant's Attorney] After having examined Mr. Boring and after having taken his history and listening to his complaints were you able to reach any conclusions or diagnoses?

As noted earlier, there is some indication that Claimant was actually seeking a reinstatement of benefits because of a recurrence of his prior injury. This

A [By Claimant's doctor] Yes, I felt that he had ligamentous injury in his lower back and that his pain was mechanical in origin.

Q Were you able to arrive at any opinion, with a reasonable degree of medical certainty, as to the cause of this ligamentous injury?

A Yes, the injury on December 26, 1975.

. . . .

Q Doctor, in consideration of what you understand a ladleman to be, and if you were to further assume that during an eight hour day a ladleman would be on his feet for approximately the bulk of that time, and that he would have to lift weights of up to twenty-five pounds, and engage in frequent stooping and bending, would you have an opinion, within a reasonable degree of medical certainty, as to whether or not Mr. Boring was capable of doing that type of work *as of the time of your examination?*

A Yes, I do not believe he was capable of doing that type of work.

Q Would that be your opinion, within a reasonable degree of medical certainty, likewise, Doctor, I believe that Mr. Boring had returned to work as a grinder for a period of time in 1979, did he provide you with that history?

A Yes, that's true.

Q I'll have you assume that as a grinder this individual would be required to engage in frequent stooping and bending, frequent twisting and turning, and would lift weights of up to 100 pounds.

A Yes.

Q Based upon that assumption would you have an opinion as to whether he was capable of engaging in that kind of work *as of the time of your examination?*

A I do not believe he was capable of engaging in that type of work.

Q Would that be your opinion within a reasonable degree of medical certainty?

A Yes. (Emphasis added.)

Dr. Schor's deposition pp. 8-9.

brings us to the question of whether we should treat Claimant's petition as one for reinstatement. While it is true that Claimant's petition was labeled as one to set aside a final receipt, we are not bound by the petition designation and the form of the petition filed is not controlling *where the facts warrant relief,* and if a claimant is entitled to relief under any section of the Act, his petition will be considered as filed under that section. *Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Pecora),* 82 Pa. Commonwealth Ct. 538, 475 A.2d 972 (1984). This does not mean that it is the duty of the referee, the Board or this Court to establish a Claimant's case for him, but simply means that if the facts as established by a claimant entitle him to relief, and the parties address those facts before the referee, an erroneous designation of a benefit section carrying with it altogether different proofs and burdens, will not prevent the claimant from a recovery under the proper section of the Act.

We must acknowledge in this case that the specific question of which section of the Act was the appropriate one was not directly raised by the parties, the referee, or the Board and ordinarily in such a case we would remand for additional factfinding. But because both the petition filed by Claimant and the answer thereto discussed recurrence, we do not believe a remand is needed for the purpose of allowing Employer to present evidence.[4] Rather, we believe that Employer had sufficient notice that recurrence was in issue. Accordingly, for reasons of judicial economy, we review the appeal as a petiton for reinstatement[5] and take up the parties' ques-

---

[4] Employer chose not to present any medical evidence.

[5] We emphasize again that we will not consider theories not raised below. Here this theory was raised; it merely was not specifically identified by name.

tion of whether the record contains evidence from which the referee as factfinder could conclude that Claimant's disability recurred on October 12, 1979.

A claimant seeking a reinstatement of benefits because of the *recurrence* of a prior work-related injury must prove "by precise and credible evidence of a more definite and specific nature than that upon which initial compensation was based" that his disability has recurred. *Jerry Green & Sons v. Workmen's Compensation Appeal Board,* 63 Pa. Commonwealth Ct. 263, 265, 437 A.2d 1279, 1280 (1981). Thus, on *any date* for which testimony establishes recurrence benefits can be reinstated.

Our review of the record discloses that the referee's finding of recurrence *as of October 12, 1979* cannot be sustained. Claimant's doctor testified, as noted above, as to a recurrence at the time he conducted his examination, on February 11, 1982. But nowhere is the issue of Claimant's disability as of 1979 even discussed by him.[6] Hence, the referee lacked any evidence from which he could conclude that as of October 1979 the injury had recurred. But there is clearly competent evidence that as of the date of the examination (February 11, 1982) the injury had recurred. Accordingly, we will vacate the order of the Board and remand the matter with directions that the Board enter an order modifying the date of the award to comport with the evidence presented.

### ORDER

Now, March 18, 1986, the order of the Workmen's Compensation Appeal Board, No. A-87224, dated April 19, 1984 is hereby vacated and the case is remanded for entry of an order granting benefits from February 11, 1982. Jurisdiction relinquished.

---

[6] *See supra* note 3.

DISSENTING OPINION BY SENIOR JUDGE BARBIERI:

Since I cannot agree with the view of the majority that there is insufficient evidence to sustain the decision of the referee reinstating compensation payments as of October 12, 1979, I must most repectfully dissent. I do so because I do not believe that unequivocal medical testimony is required to establish that Claimant had some continuing partial disability through and after the time of signing the final receipt. His testimony as to his pain and continuing disability is competent and substantial evidence, *Morgan v. Giant Markets, Inc.,* 483 Pa. 421, 397 A.2d 415 (1979), and a final receipt under Section 434 is merely "prima facie evidence of the termination of the employer's liability to pay compensation. . . ." Claimant's testimony was certainly competent to rebut the merely prima facie effect of the final receipt. *See Dunmore School District v. Workmen's Compensation Appeal Board (Lorusso),* 89 Pa. Commonwealth Ct. 368, 372, 492 A.2d 773, 775 (1985).

Also, there are other grounds than disability at the time of signing which may form the basis for rendering the final receipt ineffectual as a means for terminating the employer's liability.[1] Indeed, Claimant testified here that he had no intention of executing a "final sign-off"; that the pain and difficulty had existed since the time of the injury with no diminution at the time of signing the receipt; that at times his back pain affects him to such an extent that he has fallen. He testified:

> Q. Now, at that time, did you sign a final receipt in this case?

---

[1] *Bethlehem Steel Corp. v. Workmen's Compensation Appeal Board (Krause),* 77 Pa. Commonwealth Ct. 420, 465 A.2d 1342 (1983) ("intentional and/or unintentional deception"); *Climax Molybdenum Co. v. Workmen's Compensation Appeal Board (McCombs),* 15 Pa. Commonwealth Ct. 249, 325 A.2d 822 (1974) (fraud and deceit in misrepresenting nature of final receipt).

A.   I signed the paper that they told me was releasing my last check *is what I was told at the mill*. No, I didn't sign anything that I knew was a final sign-off. (Emphasis added.)

Q.   At the time that you signed the final receipt, were you having difficulty with your low back area at that time?

A.   Yes.

Q.   Okay and the problems that you were having with your low back at the time that you signed the final receipt, were they similar to the type of problems which you are having with your low back now?

A.   Yes.

Q.   You went back to work in June of 1979, is that correct?

A.   Yes.

Q.   Who released you to return to work at that time?

A.   Dr. Elizabeth Hughes from Harmarville. I *went back on a six-month trial basis*. (Emphasis added.)

. . . .

Q.   Now, did you stop working in October of 1979?

A.   Yes, the 12th of October.

Q.   Okay and were you laid off from work at that time?

A.   Yes, the job that they put me on. Then they told me that I would be called back within two or three weeks, that there was just some repairs.

Q.   All right. Now, during the period that you were back at work from June of 1979 up until October 12, 1979, while you were working for

your employer, did you have any difficulty with your back during that period of time?

A. Yes, the whole time. All the time with the lifting and the bending and everything which you have to do.

Q. You were having difficulty with your back then?

A. Oh, yes. I still do. It's every day of my life, ever since I have been hurt, I've had difficulty bending and if I get on certain twists, I can't even hardly straighten up.

Q. Okay. Now, you indicated that you were laid off in October of 1979. Have you been called back to work anywhere since October of 1979?

A. No.

Q. You have not worked for anyone?

A. No.

Q. You have never been called back to work at Duraloy, or have you?

A. No, I haven't.

Aside from the fact that the final receipt form was not dated, there appears here to have been an improper use of a final receipt under the terms of §121.17 of the Rules and Regulations of the Department of Labor and Industry, which provides:[2]

§121.17 Termination.

(a) *By final receipt.* When an injured employe has recovered from his injury

(1) so that he has regained his full earning power, and

-------

[2] In *Climax Molybdenum Co.* and *Bethlehem Steel Corp., id.,* the circumstances were remarkably like those in this case. Claimant was misinformed as to the true nature of the final receipt and led to believe that it was a mere receipt for a payment of compensation. It was held in each case that the final receipt was properly held to be invalid.

(2)   so that all disability due to his injury has terminated, a final receipt may be fully prepared for presentation to the employe for signature. The fact that the employe returns to similar work at his original or greater wage unaccompanied by a showing that all disability has terminated is not a basis for a final receipt. However, it may be the basis for a suspension of compensation.

Accordingly, since a final receipt was an inappropriate form for use in light of Claimant's continuing complaints and disability, and since the referee had an adequate basis in the evidence for reinstating payments as of October 12, 1979, I would affirm the decision of the referee as affirmed by the Board without change.[3]

---

[3] We note as to disability at the time of signing the final receipt that Dr. Elizabeth Hughes was the family Doctor and attending physician, whereas Claimant's medical witness, Dr. Gerald I. Schor, examined the Claimant at the request of his legal counsel and was in the case solely for the purpose of testifying. It was Dr. Hughes who authorized Claimant's return to work "on a six-month trial basis."