IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Delaware,              :
             Petitioner       :
                                    :    No. 1441 C.D. 2016
        v.                   :
                                    :    Submitted: May 19, 2017
Workers' Compensation Appeal    :
Board (Worrell),                  :
             Respondent    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE JOSEPH M. COSGROVE, Judge

***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED: August 1, 2017

County of Delaware (Employer) petitions for review of the July 28, 2016, order of the Workers' Compensation Appeal Board (Board), affirming the decision of the Workers' Compensation Judge (WCJ) granting the claim petition of Linda Worrell (Claimant) and denying Employer's termination petition.

**Facts and Procedural History**

Claimant worked for Employer as a Certified Nursing Assistant (CNA). Her duties included helping patients in and out of bed, as well as helping them with showering, meals, and other tasks. This work involved lifting patients out of wheelchairs to help them into bed. On January 23, 2014, Claimant was assisting a

patient with a shower when she slipped and fell on the tile floor. At the time of the incident, Claimant testified that she felt pain the area of her left shoulder and elbow. Claimant visited the nursing station where a report was taken, before being brought to Riddle Memorial Emergency Room by security staff. Claimant was advised to seek additional care from the WorkNet staff. On January 24, 2014, Claimant sought treatment from WorkNet, with Isaiah Abney, D.O., who is Board-certified in family medicine. Dr. Abney ordered X-rays, which were negative. He diagnosed Claimant as suffering from a contusion and shoulder strain and prescribed physical therapy as the proper course of treatment. On that same day, Claimant was released to return to work with restrictions on lifting. (Reproduced Record (R.R.) at 20a-21a, 185a-87a, 228a, 230a, 247a.)

Claimant returned to work in a limited capacity on January 27, 2014. Upon her return, Claimant stated that she performed modified and sedentary work for approximately eight weeks while she was undergoing physical therapy. Claimant testified that although her elbow and shoulder continued to hurt, she tolerated the pain and performed her assigned duties. (R.R. at 21a, 187a-88a.)

On January 29, 2014, Employer issued a medical-only notice of temporary compensation payable (NTCP), noting that Claimant suffered a work injury on January 23, 2014, which consisted of an elbow contusion. (R.R. at 293a.) On February 10, 2014, Claimant was again evaluated by Dr. Abney, who maintained lifting restrictions. On February 19, 2014, Dr. Abney released Claimant to return to full duty. (R.R. at 253a, 255a.) Claimant testified that upon her return to full duty, she was not working with total care patients. Claimant further testified that her elbow and shoulder were still causing her pain. (R.R. at 188a.)

2

Claimant stated that approximately three weeks after her return to full duty, in March of 2014, her arm stiffened up and she felt a sharp pain in her shoulder when rolling a patient over. Claimant noted that although she was not working with total care patients at the time, her supervisor told her to assist with the patient. Claimant didn't immediately seek treatment, but testified that she sought treatment from her own doctor, Elizabeth Ziegler, M.D., in April of 2014. (R.R. at 188a-90a.) Claimant testified that she continued to work, though she testified that she would call off work if the pain was significant. (R.R. at 196a.) At the request of Dr. Ziegler, an MRI was performed on July 30, 2014, which indicated a torn rotator cuff. (R.R. at 168a.) She referred Claimant to Corey Ruth, M.D., an orthopedic specialist. (R.R. at 192a.) Claimant testified that she stopped work completely after she commenced treatment with Dr. Ruth. (R.R. at 188a.)

Dr. Ruth, a Board-certified orthopedic surgeon, first saw Claimant on August 12, 2014. At that time, Dr. Ruth diagnosed Claimant with a torn rotator cuff based on the MRI and a physical examination. Dr. Ruth prescribed Motrin and Tylenol with codeine, and injected Claimant's left shoulder with Cortisone. Dr. Ruth saw Claimant several times in the subsequent months, and there was minimal improvement. (R.R. at 167a-69a.)

On August 15, 2014, Claimant filed a claim petition, alleging full disability as of that date as the result of the January 23, 2014, injury to Claimant's left elbow and left shoulder. (R.R. at 1a-2a.) On September 4, 2014, Employer filed a timely answer, denying all material allegations. (R.R. at 6a.) On June 10, 2015, Employer filed a petition to terminate compensation benefits. This petition alleged that as of February 19, 2014, Claimant was fully recovered and able to return to work

without restrictions. (R.R. at 10a.) Claimant filed a timely answer denying all material allegations. (R.R. at 16a.)

On June 16, 2015, a hearing was held before the WCJ. Claimant testified consistent with the above chronology of the work injury, her treatment, and her subsequent employment activities. Claimant further testified that she had begun seeing a chiropractor, Dr. Pearson. While the treatment provided by Dr. Pearson was helping, Claimant testified that she did not believe she could return to work to perform any tasks, and that none of her treatment providers had released her to return to full duty. (R.R. at 153a-56a.)

Claimant offered deposition testimony from Dr. Ruth, who testified consistent with the above chronology. He testified that her shoulder injury was caused by the January 23, 2014, incident, and that she would benefit from surgery on her shoulder. (R.R. at 169a). During cross-examination, Dr. Ruth stated that he did not examine her left elbow because Claimant's complaint was only about the pain in her shoulder. Dr. Ruth further testified that Claimant had a pre-existing condition, arthritis, which contributed to the tear at the time of the January 23, 2014 injury. Ultimately, Dr. Ruth concluded Claimant could not return to her full-duty job; Claimant would require restrictions due to the rotator cuff tear. (R.R. at 169a, 173a-74a.)

Employer offered deposition testimony from Dr. Abney. He testified that when he saw Claimant on January 24, 2014, he concluded Claimant likely had "a contusion or shoulder strain." Dr. Abney testified that tests for rotator cuff tear were negative. Dr. Abney stated that he completed an activity work status report indicating that Claimant could return to work on a modified basis. He noted that he

4

discharged the Claimant to full duty on February 19, 2014. Dr. Abney did not treat Claimant after that date. (R.R. at 231a-33a.)

On cross-examination, Dr. Abney admitted he had not seen Claimant since February 19, 2014, and, thus, would not be in a position to comment on any worsening of her injury. However, Dr. Abney did testify he believed Claimant to be fully recovered from the January 23, 2014 injury. (R.R. at 234a-35a.)

Employer also presented the deposition testimony of Noubar Didizian, M.D., a Board-certified orthopedic surgeon. Dr. Didizian conducted a records review, noting that Claimant had full range of motion when she was examined in the emergency room, and again later when examined at WorkNet. Dr. Didizian indicated that based on the X-Ray taken on January 24, 2014, there was no rotator cuff tear at that time. (R.R. at 306a-07a, 313a-14a.) Dr. Didizian also noted subsequent visits that Claimant made to Dr. Ziegler on February 7, 2014, and March 11, 2014, where Claimant did not complain of shoulder pain. (R.R. at 323a-24a.) Dr. Didizian testified that he disagreed with Dr. Ruth's conclusion that the rotator cuff tear stemmed from the January 23, 2014, incident. Dr. Didizian also disagreed with the conclusion that Claimant could not return to work as a CNA due to her injuries. (R.R. at 314a, 316a.)

Employer further presented deposition testimony from Cynthia Caslin, who works as the Vice President of workers' compensation claims with Arthur J. Gallagher Risk Management Services, the third-party administrator for Employer's workers' compensation claims. Caslin testified that a medical-only NTCP had been issued on January 29, 2014, in relation to the January 23, 2014 injury. (R.R. at 268a, 293a.) Caslin also testified that she was later contacted on September 3, 2014, by Claimant, notifying her that Claimant had been out of work since August 14, 2014.

5

Caslin testified that the aggravating incident that Claimant indicated caused the increased pain was not documented. Caslin testified that she did not relate the rotator cuff tear to the January 23, 2014, incident. (R.R. at 270a, 273a, 284a.)

In his decision, the WCJ found Claimant credible and convincing. (WCJ's Finding of Fact No. 11.) He also found Dr. Ruth to have been credible and convincing, noting that while there was possible confusion regarding the March, 2014, incident and its relation to the injury, Dr. Ruth's opinion was supported by Claimant's testimony and subsequent diagnostic tests, thus justifying a finding that "Claimant suffered a disabling injury while working for the Defendant on January 23, 2014." (WCJ's Finding of Fact No. 12.) The WCJ found Caslin's testimony credible and convincing as it pertained to "her review of the records and confusion with regard to the specific injuries caused by the January 23, 2014 employment injury." (WCJ's Finding of Fact No. 13.) The WCJ found Dr. Abney credible in part, but found Dr. Abney not credible in his testimony limiting the injury to a contusion, or his conclusion that Claimant had fully recovered. (WCJ's Finding of Fact No. 14.)

Finally, the WCJ found Dr. Didizian credible only in part, but found that Dr. Didizian's conclusion that Claimant was fully recovered was overcome by Claimant's credible testimony and Dr. Ruth's clinical observations. (WCJ's Finding of Fact No. 15.) Accordingly, the WCJ concluded that Claimant had met the burden of proof necessary to establish full disability as a result of the January 23, 2014, injury, and Employer failed to meet its burden to establish that Claimant was fully recovered from that same injury. (WCJ's Conclusions of Law Nos. 2-4.) On December 4, 2015, the WCJ circulated an order granting Claimant's claim petition and denying Employer's termination petition.

6

Employer appealed to the Board and argued that the WCJ capriciously disregarded competent evidence. Employer also argued the WCJ failed to consider the testimony as a whole and properly construe the evidence and the burden of proof in connection with the claim petition. Finally, Employer argued that the WCJ materially misconstrued the testimony of both claimant and claimant's physician as well as all of defendant's evidence. The Board concluded that the WCJ did not capriciously disregard or materially misconstrue the evidence. (Board op. at 2-4, 7.) The Board stated that the WCJ has "complete authority over questions of credibility, conflicting medical evidence and evidentiary weight." (Board op. at 6.) Further, the Board noted that rejection of evidence is not capricious disregard. (Board op. at 7.)

Employer also argued that the average weekly wage was calculated incorrectly, because the WCJ failed to consider a submitted statement of wages. The Board rejected that argument, stating that the statement of wages is hearsay evidence which cannot support a finding of fact without corroboration. (Board op. at 7-8.) Since the elements that go into calculation of an average weekly wage are findings of fact, the Board concluded that the WCJ did not err when he accepted Claimant's testimony as fact. (Board op. at 8.) As such, the Board found no error and affirmed the decision of the WCJ by order dated July 28, 2016.

Employer petitioned for review by this Court.[1] Employer presents three arguments on appeal: (1) the WCJ erred by capriciously disregarding evidence concerning the claimant's average weekly wage and corresponding compensation

---

[1] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

7

rate, and failed to render a reasoned decision; (2) the Board erred in affirming the WCJ's finding that Claimant met her burden of proof; and, (3) the Board erred in affirming the WCJ's finding that Employer failed to establish its burden of proof necessary to establish Claimant was fully recovered from the January 23, 2014 injury. (Employer's brief at 5, 8-9.)

**Discussion**

In a workers' compensation proceeding, the WCJ is the ultimate fact finder and is the sole authority for determining the weight and credibility of evidence. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.),* 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997), *appeal denied*, 718 A.2d 787 (Pa. 1998). "As such, the WCJ is free to accept or reject the testimony of any witness, including medical witnesses, in whole or in part." *Id.* The WCJ's findings will not be disturbed on appeal when they are supported by substantial, competent evidence. *Greenwich Collieries v. Workmen's Compensation Appeal Board (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). "Substantial evidence is such relevant evidence which a reasonable mind might accept as adequate to support a finding." *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel, State Workmen's Insurance Fund),* 578 A.2d 1016, 1018 (Pa. Cmwlth.), *appeal denied*, 592 A.2d 46 (Pa. 1990). Moreover, where both parties present evidence, it is irrelevant that the record contains evidence which supports a finding contrary to that made by the WCJ; rather, the pertinent inquiry is whether evidence exists that supports the WCJ's findings. *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.),* 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

8

## Capricious Disregard

In the present case, Employer argues that the Board erred in affirming the WCJ's decision because the Board capriciously disregarded evidence concerning Claimant's average weekly wage and corresponding compensation rate. Employer asserts that the Board exceeded its scope of review by engaging in impermissible fact finding and making its own credibility determinations. Specifically, Employer argues that the WCJ erred in ruling without substantial evidence to support his medical conclusions. (Employer's brief at 8-9, 17-25.) However, the essence of Employer's argument is that the WCJ erred by believing Claimant's treating physician rather than the doctors who testified on behalf of Employer. Such an argument is contrary to this Court's longstanding deference to WCJs as finders of fact. *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board (Krawczynski)*, 305 A.2d 757, 761 (Pa. Cmwlth. 1973). As set forth above, simply because the losing party offered competent evidence, does not automatically render rejection of that evidence as arbitrary or capricious. *Hoffmaster*, 721 A.2d at 1155.

Employer also argues that the Board erred in disregarding the WCJ's failure to provide findings of fact with regard to Claimant's average weekly wage, and consequently, the WCJ's failure to provide a rationale for his determination, that is, a failure to provide a reasoned decision.

Employer argues that the Board capriciously disregarded a statement of wages entered into evidence by Employer.[2] (Employer's Brief at 13.) "Capricious

---

[2] A statement of wages was admitted into evidence before the WCJ as defense exhibit 7. (R.R. at 19a, 414a-15a.) The second page of the statement of wages indicated that it was completed by Cynthia Caslin. (R.R. at 415a.) Nonetheless, Caslin was not questioned at all about the average weekly wage during the course of her deposition. (R.R. at 263a-92a.)

9

disregard" must be addressed by a court when raised by a party. *Leon E. Wintermeyer, Inc., v. Workers' Compensation Appeal Board (Marlowe),* 812 A.2d 478, 487 (Pa. 2002).

In the present case, the disregard of the statement of wages was not "capricious" because a statement of wages alone, without corroboration, constitutes hearsay evidence and cannot support a finding of fact. *Pike v. Workers' Compensation Board (Bob Hart Contractors),* 639 A.2d 887, 888 (Pa. Cmwlth. 1994). Because Employer did not present testimony corroborating the statement of wages, the Board did not err when it affirmed the WCJ's decision.

## Reasoned Decision

Employer also argues that the decision by the WCJ was not a "reasoned decision" as required under Section 422(a) of the Workers' Compensation Act (Act).[3] The Supreme Court in *Daniels v. Workers' Compensation Appeal Board (Tristate Transport),* 828 A.2d 1043 (Pa. 2003), offered guidance on how to interpret this requirement: the WCJ must specify the evidence on which he or she is relying, and the reasons for accepting that evidence. *Id.* at 1047. Further, the Court stated:

> [W]e hold that a decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by the WCAB without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less.

*Id.* at 1052. Here, the WCJ stated in his findings of fact that he was relying on Claimant's testimony, and he found her to be a credible witness upon observing her

---

[3] Section 422(a) of Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834.

10

demeanor. Given that the WCJ provided a rationale for his conclusion, the WCJ has satisfied the requirements of Section 422(a).

## Average Weekly Wage

The determination of a claimant's hourly wage is a question of fact to be resolved by the WCJ. *Lahr Mechanical & State Workers' Insurance Fund v. Workers' Compensation Appeal Board,* 933 A.2d 1095, 1099 (Pa. Cmwlth. 2007). Employer's argument that the WCJ failed to provide a finding of fact with regard to Claimant's average weekly wage is erroneous. The WCJ provided a descriptive finding, Finding of Fact No. 6, holding that Claimant worked five days a week, on the 3:00 p.m. to 11:00 p.m. shift, at a rate of $10.55 per hour. This finding was based on Claimant's credible testimony. The credibility determination by the WCJ relied on Claimant's demeanor as noted in Finding of Fact No. 11. The claim petition submitted by Claimant asserted an average weekly wage of $425.00. (R.R. at 2a.) The WCJ accepted Claimant's assertion as fact, and found that Claimant's average weekly wage was $425.00. (WCJ's Finding of Fact No. 1.) While we agree that Claimant's testimony as credited by the WCJ should not be re-evaluated, the undisputed testimony in this case supports an average weekly wage of $422.00 (8 hour shift X 5 days/week X $10.55 per hour). There is no evidence on the record supporting the $425.00 rate as a finding of fact. As such, the WCJ's order should be modified to reflect an average weekly wage of $422.00, and thus a benefit rate of $379.80 per week.[4]

---

[4] Under section 105.1 of the Act, added by the Act of March 29, 1972, P.L. 159, 77 P.S. §25.1, the Department of Labor and Industry is tasked to set "the Statewide average weekly wage" for each year. For 2014 work injuries involving an average weekly wage of $517.77 or less, the benefit rate is 90 percent of the average weekly wage.

11

## Sufficiency of Evidence

Employer argues that the WCJ lacked sufficient evidence to either grant the claim petition or deny the termination petition. The WCJ's findings will not be disturbed on appeal if there is substantial evidence in the record to support the findings, a well-established standard in Pennsylvania workers' compensation cases dating back to *Universal Cyclops Steel Corporation v. Workmen's Compensation Appeal Board (Krawczynski)*, 305 A.2d 757 (Pa. Cmwlth. 1973).

Employer argues that Claimant's testimony does not satisfy her burden of proof. (Employer's Brief at 19.) Moreover, Employer argues that the WCJ improperly weighed the testimony of Claimant and Dr. Ruth. However, the WCJ has discretion in determining what testimony to credit and what to reject, including that of medical witnesses. *Lombardo*, 698 A.2d at 1381. Claimant testified that both her elbow and shoulder were injured in the January 23, 2014 incident. Dr. Ruth corroborated this testimony with an explanation of how a pre-existing condition could have contributed to the injury on that date. While the WCJ acknowledged that there could be "confusion" with reference to the separate, March 2014 incident, he ultimately found that the conclusions drawn by Dr. Ruth were credible. The WCJ did not find credible the testimony that supports Employer's position. Accordingly, the Board did not err in affirming the order granting Claimant's petition.

Finally, Employer argues that it met its burden of proof with respect to the termination petition. In order to prevail in a termination proceeding where, as here, an injured worker voices complaints in the same area of the body that was injured, the Employer must show that all disability connected to the work-related injury has ceased, and that Claimant's continued symptoms are unrelated to the work injury. *Marks v. Workers' Compensation Appeal Board (Dana Corporation)*, 898

12

A.2d 689, 693, 695 (Pa. Cmwlth. 2006). As we have set forth above, Claimant offered credible testimony attesting to the ongoing nature of the disability, and Dr. Ruth specified that Claimant is not fully recovered from the work injury. Testimony from Dr. Didizian, who did not examine Claimant, supported a contrary position, but he was not found credible on this point by the WCJ. Employer effectively seeks a re-litigation of its termination petition because it is displeased with the WCJ's weighing of the witnesses' testimony and the evidence. Such credibility determinations are for the WCJ, not a reviewing tribunal. *Universal Cyclops Steel Corporation,* 305 A.2d at 760-61. As such, the Board did not err in affirming the WCJ's order with respect to Employer's termination petition.

### Conclusion

The testimony of Claimant and Dr. Ruth constituted competent evidence which supports the grant of Claimant's claim petition and the denial of Employer's termination petition. Thus, the Board did not err in affirming the WCJ's decision.

Accordingly, the order of the Board is affirmed as modified to reflect the average weekly wage supported by Claimant's testimony, $422.00, for a weekly benefit rate of $379.80.

_____
PATRICIA A. McCULLOUGH, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

County of Delaware, : 
          Petitioner : 
           :   No. 1441 C.D. 2016
       v. : 
           : 
Workers' Compensation Appeal : 
Board (Worrell), : 
          Respondent : 

## *ORDER*

AND NOW, this 1st day of August, 2017, the order of the Workers' Compensation Appeal Board dated July 28, 2016, is affirmed, but modified to reflect an average weekly wage for Linda Worrell in the amount of $422.00.

_____
PATRICIA A. McCULLOUGH, Judge